No. 21-55685

# In the United States Court of Appeals

## FOR THE NINTH CIRCUIT

JOSE EMILIO RONDEROS, an individual,

*Plaintiff - Appellee*,

v.

USF REDDAWAY, INC., an Oregon Corporation;
YELLOW CORPORATION, FKA YRC WORLDWIDE, INC.,

*Defendants - Appellants*.

On Appeal from the U.S. District Court for the District of Central California
No. 5:21-cv-00639 - Hon. Michael W. Fitzgerald

## APPELLANTS' OPENING BRIEF

Jason S. Mills
Samson C. Huang
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
Telephone No. (213) 612-7387
jason.mills@morganlewis.com
samson.huang@morganlewis.com

Catherine Eschbach
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
Telephone No. (713) 890-5719
catherine.eschbach@morganlewis.com

Thomas M. Peterson
MORGAN, LEWIS & BOCKIUS LLP
One Market Street, Spear Tower
San Francisco, CA 94105
Telephone No. (415) 442-1000
thomas.peterson@morganlewis.com

Counsel for Appellants
USF REDDAWAY, INC. and YELLOW CORPORATION

# CORPORATE DISCLOSURE STATEMENT

Defendants-Appellees USF Reddaway, Inc. and Yellow Corporation make the following disclosure:

- Appellant USF Reddaway Inc. is a nongovernmental entity whose sole shareholder is YRC Regional Transportation Inc.;

- YRC Regional Transportation Inc.'s sole shareholder is YRC Worldwide Inc.;

- Appellant Yellow Corporation (formerly known as YRC Worldwide Inc.) is a publicly held corporation. No public corporation owns 10% or more of YRC Worldwide Inc.'s stock.

Dated: December 21, 2021    By:  *s/ Thomas M. Peterson*
        Thomas M. Peterson
        Counsel for Appellant
        USF Reddaway, Inc. and Yellow
        Corporation

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE...............................................................3

I.    Factual Background........................................................................3

    A.    Text of the "Agreement to Arbitrate" Section. ....................3

    B.    Ronderos's claims fall within the Arbitration Agreement. ..................6

II.   Procedural Background ................................................................6

SUMMARY OF THE ARGUMENT ......................................................8

STANDARD OF REVIEW ...................................................................9

ARGUMENT .......................................................................................9

I.    The District Court Erred By Finding More Than Minimal Procedural Unconscionability. .........................................................11

    A.    Only minimal procedural unconscionability arises because the agreement is an adhesion contract.......................................12

    B.    The District Court erred in finding additional procedural unconscionability.................................................................14

II.   The District Court Erred By Not Severing The Two Provisions It Found Substantively Unconscionable. .........................................21

# TABLE OF CONTENTS
### (continued)

Page

A.   The district court erred in the breadth of the lack of mutuality it found in its analysis of substantive unconscionability........................22

  1.   The district court erred in the amount of unconscionability it found in the "notice" and "statute of limitations" provisions. ...........................................................23

  2.   The district court erred in the amount of unconscionability it found in the preliminary injunction carve out. ..................................................................................25

B.   The provisions at issue were collateral and should have been severed. ...........................................................................................28

  1.   The district court erred in finding the entire agreement was permeated by illegality. ......................................................30

  2.   The arbitration agreement's severability clause required the district court to sever any unlawful provisions. ..................37

III.   The District Court Erred In Holding The Arbitration Agreement Unenforceable. ................................................................................39

CONCLUSION .....................................................................................40

STATEMENT OF RELATED CASES .................................................41

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................42

CERTIFICATE OF SERVICE .............................................................43

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abramson v. Juniper Network, Inc.*,
115 Cal. App. 4th 638 (2004) ..............................................................26, 27, 38

*Armendariz v. Foundation Health Psychcare Serv., Inc.*,
24 Cal.4th 83 (2000) ......................................................................*passim*

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................9

*Baeza v. Superior Court*,
201 Cal. App. 4th 1214 (2011) ..........................................................30

*Balen v. Holland Am. Line Inc.*,
583 F.3d 647 (9th Cir. 2009) ............................................................9

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ..............................................................10, 23

*Bermudez v. PrimeLending*,
No. LA CV12-00987 ......................................................................36

*Brookwood v. Bank of Am.*,
45 Cal. App. 4th 1667 (1996) ..........................................................13

*Buchsbaum v. Digital Intel. Sys., LLC*,
No. 20-CV-00706-BAS-AGS, 2020 WL 7059515 (S.D. Cal. Dec. 2, 2020) ....35

*Cancellier v. Federated Dep't Stores*,
672 F.2d 1312 (9th Cir. 1982) ..........................................................25

*Carlson v. Home Team Pest Def., Inc.*,
239 Cal. App. 4th 619 (2015) ..........................................................24

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F. Supp. 3d 610 (N.D. Cal. 2019)..............................................30, 35

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Cisneros Alvarez v. Altamed Health Servs. Corp.*,
  60 Cal. App. 5th 572 (2021) ........................................................16, 17

*Davis v. Kozak*,
  53 Cal. App. 5th 897 (2020) ......................................................*passim*

*Diaz v. Sohnen Enters.*,
  34 Cal. App. 5th 126 (2019) ...............................................10, 12, 39

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .......................................................................38

*Farrar v. Direct Commerce, Inc.*,
  9 Cal. App. 5th 1257 (2017) .............................................................31

*Galen v. Redfin Corp.*,
  No. 14-CV-05229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ............36

*Grabowski v. Robinson*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011).......................................30, 36

*Harris v. Bingham McCutchen LLP*,
  214 Cal. App. 4th 1399 (2013) .........................................................20

*Lang v. Skytap, Inc.*,
  347 F. Supp. 3d 420 (N.D. Cal. 2018)................................................36

*Lange v. Monster Energy Co.*,
  46 Cal. App. 5th 436 (2020) ......................................................27, 29

*Lee v. Intelius Inc.*,
  737 F.3d 1254 (9th Cir. 2013) ............................................................9

*Martinez v. Vision Precision Holdings, LLC*,
  1:19-CV-01002-DAD-JLT, 2019 WL 7290492
  (E.D. Cal. Dec. 30, 2019) ...................................................13, 16, 18

*OTO, L.L.C. v. Kho*,
  8 Cal. 5th 111 (2019), *cert. denied* 141 S. Ct. 85 (2020) ..........................*passim*

v

## TABLE OF AUTHORITIES
(continued)

Page(s)

*OTO, LLC v. Kho*,
    2016 WL 7432641 (Cal. App. 1 Dist. Dec. 19, 2016) .........................17

*Pereyra v. Guaranteed Rate, Inc.*,
    No. 18-CV-06669-EMC, 2019 WL 2716519 (N.D. Cal. June 28, 2019) ..........35

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal.4th 223 (2012) ................................................................10

*Pope v. Sonatype, Inc.*,
    5:15-CV-000956-RMW, 2015 WL 2174033 (N.D. Cal. May 8, 2015) .............36

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ....................................................*passim*

*Quiroz v. ADS-Myers, Inc.*,
    20-CV-01755-JD, 2021 WL 4453579 (N.D. Cal. Sept. 29, 2021) ....................15

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal.4th 899 (2015) ........................................................10, 12, 23

*Serafin, LLC v. Balco Props. Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ........................................................29

*Serpa v. Cal. Sur. Investigations, Inc.*,
    215 Cal.App.4th 695 (2013) ..........................................................12

*Smith v. Vmware, Inc.*,
    No. 15-CV-03750-TEH, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016) .................30

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .........................................................9

*Torrecillas v. Fitness Int'l, LLC*,
    52 Cal. App. 5th 485 (2020) ..........................................................15

*Turpen v. City of Corvallis*,
    26 F.3d 978 (9th Cir. 1994) ..........................................................21

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Vargas v. Delivery Outsourcing, LLC,*
No. 15-CV-03408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ..............36

*Wu v. JPMorgan Chase Bank, N.A.,*
No. LA CV19-00363 ..........................................................................................35

*Yoon v. Applied Underwriters, Inc.,*
SA CV-2002-303-DOC-(DFMx), 2021 WL 4318321
(C.D. Cal. Mar. 12, 2021) ..................................................................................16

## STATUTES

9 U.S.C. § 2 ...........................................................................................................9
§ 16(a) .............................................................................................................. 2

Cal. Civ. Code § 1599 ....................................................................................28, 38
§ 1670.5(a) ......................................................................................................28
§ 1749.5 ...........................................................................................................16
§ 1803.1 ...........................................................................................................16

Cal Fin. Code § 22603 .........................................................................................17

Cal. Gov't Code § 12960 ......................................................................................25

# INTRODUCTION

Parties' reasonable contractual expectations should be upheld. Plaintiff-Appellee Jose Ronderos agreed to arbitrate any claims arising from his employment with Appellants. He did not contest that he signed the agreement. He did not dispute that a contract was formed between the parties. Instead, after a dispute arose between the parties, he failed to abide by his agreement and filed a lawsuit.

When Appellants asked Ronderos to abide by his contract and submit to arbitration, he refused. Ronderos claimed his agreement was unenforceable because it was unconscionable. But Ronderos has not met his burden of proving unconscionability where the arbitration agreement (1) comprised a little over one page in a two-page employment agreement, (2) directed Ronderos in bolded headings and a sentence right above his signature line that he was agreeing to arbitration and waiving his right to a jury trial, and (3) set forth its terms with a readable font, appropriate spacing between paragraphs, minimum legal jargon, and paragraphs grouped by topic.

Under California law, Ronderos has to prove the arbitration agreement was both procedurally and substantively unconscionable. Although minimal procedural unconscionability exists because the agreement was adhesive, any potential substantively unconscionable provision could be severed without otherwise altering the agreement or requiring reformation. In these circumstances, consistent with both

1

federal and California policies favoring arbitration, the district court should have severed any substantively unconscionable provisions and enforced the arbitration agreement. And, all the more so here, where the arbitration agreement included a severability clause.

The district court erred. It improperly found procedural unconscionability beyond the minimal amount arising from the agreement's adhesive nature and refused to sever any substantively unconscionable provisions (as well as erred in assessing the extent of substantive unconscionability). This Court should correct the district court's errors, reverse the judgment, and render the parties' arbitration agreement valid and enforceable.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 9 U.S.C. § 16(a).

## STATEMENT OF THE ISSUES

1. Did the district court err by refusing to enforce an arbitration agreement where there was minimal procedural unconscionability and any substantively unconscionable provisions should have been severed under both California law and the terms of the contract?

## STATEMENT OF THE CASE

### I.  Factual Background

Before Plaintiff Jose Ronderos ("Ronderos") began his employment with USF Reddaway Inc. ("Reddaway") and Yellow Corporation f/k/a YRC Worldwide Inc. ("Yellow Corp") (together, "Appellants"), he had to review and sign a two-page candidate statement.  2ER-78.[1]  The candidate statement contains two headings in all caps bold that read: "**CANDIDATE'S STATEMENT**" and "**AGREEMENT TO ARBITRATE**."  2ER-94-95.  The text beneath each heading is all in the same normal-sized font and broken up every few lines with blank space between the paragraphs. 2ER-94-95.  Some paragraphs contain two lines; no paragraph contains more than nine lines.  2ER-94-95.  All are composed of multiple sentences.  2ER-94-95.  At the very bottom right above the signature line, in bold italics, is the following text: "***I have read the above statements, understand and agree with them. I understand that by agreeing to binding arbitration, both the Company and I are giving our rights to trial by jury.***"  2ER-95.

#### A.  Text of the "Agreement to Arbitrate" Section.

The section labeled "agreement to arbitrate" contains nine paragraphs over a little more than one page, grouped as follows: (1) an explanation of the benefits of

---

[1] References to the first volume of the Excerpts of the Record are styled as 1ER-xx. References to the second volume are styled as 2ER-xx.

arbitration and scope of the agreement; (2) a definition of the "Employment Claims" covered by the agreement; (3) identifying the claims not subject to arbitration; (4) an explanation of how to initiate arbitration, the choice of law clause, and the qualifications for the arbitrator; (5) an explanation of procedures governing arbitration; (6) an explanation of judicial immunity and privilege; (7) an explanation of the arbitrator's role and responsibilities; (8) an explanation of cost splitting and awards of attorneys' fees; and (9) a severance clause. 2ER-94-95.

The arbitration agreement section sets forth in the first paragraph that "[b]oth the Company and I agree to resolve all disputes, claims or controversies arising out of, or related to, my application for employment, my employment, or the cessation of my employment with the Company that would otherwise require or allow resort to a court or other government tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator." 2ER-94.

Next, the agreement defines "Employment Claims" as claims for "discrimination, harassment or retaliation and claims for benefits brought against the Company." 2ER-94. Only after this plain language explanation of claims subject to arbitration does the agreement list examples of statutory schemes under which Ronderos might bring a claim governed by the agreement. 2ER-94-95. No acronyms or statutory references are used, but instead lists the following descriptive titles: "the Age Discrimination in Employment Act, Title VII of the Civil Rights Act

of 1964, as amended, including the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and the Fair Labor Standards Act."  2ER-94-95.

The agreement also provides that the arbitrator must be a retired judge, "may order such reasonable discovery, consistent with the expedited nature of arbitration, as is necessary to allow adequate presentation of the case," and shall issue a reasoned and written award.  2ER-95.  Any party may also request review of the award by a second arbitrator. 2ER-95.

Cost-shifting and fees are also addressed.  "The costs of arbitration and the arbitration fees will be paid by the Company" if required by controlling statutory or case law.  2ER-95.  Attorneys' fees or costs are also recoverable if permitted under applicable law.  2ER-95.

Also set forth in plain language for Ronderos is how to initiate an arbitration and the time period in which Ronderos needed to act.  2ER-95.

Ronderos further agreed that "this Agreement shall be controlled by the Federal Arbitration Agreement ("FAA")."  2ER-95.  In the event that "the FAA does not apply or if the FAA is silent on the issue," the agreement provides a back-up choice of law of the Indiana Uniform Arbitration Act.  2ER-95.  The agreement directs Ronderos to the relevant provision of the Indiana Code setting forth that Act (Indiana Code 34-57-2).  2ER-95.

In the final paragraph, the arbitration agreement includes a two-line severability clause: "In the event any portion of this Agreement is held to be in conflict with a mandatory provision of applicable law, the conflicting portion shall be stricken and the remainder of this Agreement shall be enforced." 2ER-95.

## B.    Ronderos's claims fall within the Arbitration Agreement.

Ronderos signed the Candidate Statement, including the arbitration agreement, on December 22, 2016.  2ER-95.  He began work in January 2017 as a line haul dispatcher and then a line haul manager, before being laid off as part of a reduction in force in June 2019.  2ER-78.

Ronderos alleges in his complaint that he was diagnosed with cancer a few months before the lay-off and that his employment was terminated because of his age, resulting disability, and need for accommodation. 2ER-79; 2ER-121.  Ronderos also alleges that Reddaway failed to pay him the balance of his accrued paid time off at the time of his termination.  2ER-79; 2ER-121.

## II.    Procedural Background

This case was originally filed in San Bernardino County Superior Court on February 1, 2021.  2ER-118.  The complaint alleged causes of action for: (1) discrimination; (2) FEHA retaliation; (3) failure to accommodate; (4) failure to engage in the interactive process; (5) CFRA interference/retaliation; (6) unpaid accrued paid

time off and penalties; (7) failure to pay all wages due upon termination; (8) wrongful termination in violation of public policy; and (9) whistleblower retaliation. 2ER-79; 2ER-118.

Appellants timely removed the case to federal court on April 9, 2021. 2ER-98. After Ronderos refused to arbitrate his claims as he agreed, Appellants moved to compel Ronderos to arbitration. 2ER-75. Ronderos did not dispute that he agreed to arbitrate his claims or that the FAA applied. He argued that the arbitration agreement was unconscionable and therefore unenforceable. 2ER-61-70.

The parties briefed the motion and the district court held telephonic oral argument after providing the parties with a tentative ruling. *See* 2ER-23-41. Applying California law, the district court denied the motion to compel. 1ER-2. The district court held that the arbitration agreement was procedurally unconscionable and also that two of four provisions Ronderos identified were substantively unconscionable. 1ER-6, 10-14. Rejecting Appellants' argument that the two substantively unconscionable provisions should be severed because they are collateral to the agreement to arbitrate, the district court determined that there was sufficient procedural and substantive unconscionability so as to render the agreement unenforceable. 1ER-14-21.

Appellants timely appealed. 2ER-156.

## SUMMARY OF THE ARGUMENT

The district court erred in its analysis of procedural unconscionability, substantive unconscionability, whether any unconscionable provisions should have been severed, and in determining that the arbitration agreement was unenforceable.

Minimal procedural unconscionability is present only because the agreement is adhesive. There was no additional oppression or surprise. The terms were clearly presented in readable format. The district court erred in holding otherwise.

There is also only minimal substantive unconscionability. At most, the agreement's one-year period for filing an arbitration request is substantively unconscionable. The district court erred in how much lack of mutuality it found in the contract. The clauses identified were not as one-sided as the district court characterized them.

Any substantively unconscionable terms should have been severed under both California law and the agreement's severability clause. There were low levels of procedural unconscionability and substantive unconscionability. Objectionable provisions could have been cleanly severed without altering or reforming the agreement. The district court erred in finding the arbitration agreement was so permeated with illegality that unconscionable provisions could not be severed.

This Court should reverse and compel Ronderos to arbitration.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to compel arbitration de novo. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017). Factual findings are reviewed for clear error, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009), and "[t]he interpretation and meaning of contract provisions" are reviewed de novo, *Lee v. Intelius Inc.*, 737 F.3d 1254, 1258 (9th Cir. 2013) (quotation omitted).

## ARGUMENT

Arbitration agreements must be enforced on their own terms and be placed "on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA requires that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Such grounds for invalidation include "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. § 2). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

Ronderos does not dispute that the FAA governs the arbitration agreement or that he agreed to arbitrate his claims. Rather, he argues the agreement is invalid because it is unconscionable under California law. 2ER-62-65. Appellants do not

9

contest the application of California law to the unconscionability analysis. 2ER-81-82, 84. California's "unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 912 (2015).

As the party disputing arbitrability, Ronderos "bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012). The doctrine "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016) (internal quotation marks and citations omitted). "Both elements must be present for a court to refuse enforcement." *Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 132 (2019). Unconscionability is evaluated on a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Sanchez*, 61 Cal.4th at 910.

The district court determined as to procedural unconscionability that there was "at least a moderate degree of oppression and surprise," 1ER-18; *see also* 1ER-9, and that two of the provisions—the so-called statute of limitations provision and the injunctive relief carve out—were substantively unconscionable. 1ER-12-13.

I.    **The District Court Erred By Finding More Than Minimal Procedural Unconscionability.**

Although Appellants acknowledge there is a low degree of procedural unconscionability because the agreement is an adhesion contract, the district court erred by finding there was more than this minimal amount of procedural unconscionability.  The agreement is a readable text size with ample spacing between paragraphs that is part of a two-page agreement.  Any "legal jargon" or "statutory references" (which are minimal) is first introduced by a plain meaning explanation of the concepts.  There was no surprise or oppression (beyond the adhesion contract) in the terms of agreement and how they were presented to Ronderos.

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019), *cert. denied* 141 S. Ct. 85 (2020) (internal citations omitted).  "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."  *Id.* at 126 (quoting *Pinnacle*, 55 Cal.4th at 247) (emphasis in original).

The starting point for an analysis of procedural unconscionability is whether it is a contract of adhesion.  *Armendariz v. Foundation Health Psychcare Serv., Inc.*, 24 Cal.4th 83, 113 (2000).  Adhesive contracts are "standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-

11

it-or-leave-it basis.'" *Kho*, 8 Cal.5th at 126. Standing alone, an adhesive contract establishes some degree of procedural unconscionability but is not sufficient to invalidate the contract as unconscionable. *Diaz*, 34 Cal. App. 5th at 132; *Sanchez*, 61 Cal. 4th at 915. If "there is no other indication of oppression or surprise," then "the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal.App.4th 695, 704 (2013).

### A. Only minimal procedural unconscionability arises because the agreement is an adhesion contract.

The contract at issue here is adhesive, creating a minimal degree of procedural unconscionability—as Appellants acknowledged below. *See* 2ER-84; *see also* 1ER-8. The district court's findings of procedural unconscionability should have stopped there because there was no additional oppression or surprise.

Ronderos submitted a declaration stating: "I don't know what arbitration is and I was not told by USF that the documents contained an arbitration agreement, nor that I would be giving up my right to a jury trial as well as handicapping myself by giving up my rights to bring legal disputes against USF in civil court." 2ER-74, ¶5. Yet the agreement he signed was only two pages and only had two headings. 2ER-94-95. One of those headings read in all caps and bold "**AGREEMENT TO ARBITRATE.**" 2ER-94. Right above his signature line, again bolded and this time in italics, was a sentence that read "I understand by agreeing to arbitration . . . I [am] giving up [my] rights to a jury trial." 2ER-95. Ronderos's lack of diligence cannot

12

be used as a basis to avoid his agreement to arbitrate.[2]  *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674 (1996) ("Reasonable diligence requires the reading of a contract before signing it.  A party cannot use his own lack of diligence to avoid an arbitration agreement.").

There was no surprise in the presentation of the terms of the arbitration agreement.  The arbitration agreement was broken up into nine paragraphs taking up only a little more than a page and was prominently marked with its own heading in a two-page document.  *See* 2ER-94-95.  The text is readable with normal-sized font and space between the paragraphs.  2ER-94-95.  There are only minimal references to statutory schemes and only one reference to a code provision (which accompanied the name of the act).  2ER-94-95.  In similar circumstances, California courts have found there is no additional procedural unconscionability.  *See Davis v. Kozak*, 53 Cal. App. 5th 897, 907–08 (2020) (finding agreement was not "unreasonably prolix or complex" where it was "set forth in a standalone three-page document, clearly labeled 'Binding Arbitration Agreement,' with standard-sized and readable text" and "[w]ith the exception of a few paragraphs, [did] not contain overly long or complicated sentences or use statutory references and legal jargon."); *see also Martinez v.*

---

[2] Ronderos's other (mistaken) representations about the arbitration agreement's contents and averment that he was not informed of these provisions or did not understand them, *see* 2ER-74, must be evaluated in the context of his statements showing an obvious lack of diligence in reading the short document.

*Vision Precision Holdings, LLC*, 1:19-CV-01002-DAD-JLT, 2019 WL 7290492, at
*6 (E.D. Cal. Dec. 30, 2019) (finding no procedural unconscionability in "a three-
and-a-half-page document with 10-point font, clearly delineated headings, relatively
short sections, and regularly-sized margins and spacing" and where "the section with
statutory references is confined to four lines of text and is reasonably understood in
context to refer to various anti-discrimination laws.").

### B. The District Court erred in finding additional procedural unconscionability.

The District Court's reasoning in determining that there was additional pro-
cedural unconscionability was based on two readily distinguishable cases and is in-
ternally inconsistent. Even the district court acknowledged that the contract here did
not rise to the level of procedural surprise and oppression in the contracts in those
two cases. But this Court should hold that the district court erred in finding any
procedural unconscionability beyond the minimal amount that results from being an
adhesion contract.

Relying on *Kho v. OTO, LLC* and *Davis v. TWC Dealer Group, Inc.*,[3] the
district court decided that "[t]he Arbitration Clause's execution involved at least a
moderate degree of procedural unconscionability." 1ER-9.

---

[3] Neither party cited these two cases or briefed their applicability in the district court.

In *Kho*, the arbitration agreement was oppressive because it was adhesive, presented in the context of a pre-existing employment relationship where any time spent reviewing would have reduced pay, and the contract was collected by a low-level employee. 8 Cal.5th at 127. There was also surprise because the arbitration provision was presented in a 51-line single paragraph that spanned more than a page. The court characterized the font as "extremely small," rendering the agreement "visually impenetrable." *Id.* at 128. In that single paragraph were references to at least four different statutes and also their statutory citations, at least three different state and federal agencies, the federal and California arbitration acts, and six different sections of California's Civil Code and Code of Civil Procedure. *Id.* The court also determined in analyzing the cost sharing provision, that the plaintiff would have no way to know what the statutory code reference said or that there was a legal exception applicable to arbitration. *Id.* at 128-29.

Interpreting a "virtually identical" arbitration provision to the one in *Kho* and drafted by the same party, the *Davis* court also noted there were no "paragraphs to delineate different topics" and the "second sentence of the arbitration clause manages to occupy 11 lines of text." 41 Cal.App.5th 662, 671-72 (2019).

Superficial similarities to *Kho* will not render an agreement procedurally unconscionable. *See, e.g.*, *Torrecillas v. Fitness Int'l, LLC,* 52 Cal. App. 5th 485, 494-95 (2020); *see also Quiroz v. ADS-Myers, Inc.*, 20-CV-01755-JD, 2021 WL

4453579, at *5 (N.D. Cal. Sept. 29, 2021) (distinguishing from *Kho* the agreement's format and bolded emphasis creating notice signing an arbitration agreement and waiving jury right); *Yoon v. Applied Underwriters, Inc.*, SA CV-2002-303-DOC-(DFMx), 2021 WL 4318321, at *5 (C.D. Cal. Mar. 12, 2021) (noting "the signature page of [the agreement] contains bold text that indicated to Plaintiff that she was signing an arbitration agreement, and Plaintiff certified that she read the entire agreement.").

Subsequent courts have also distinguished *Kho*'s discussion of legal jargon and confined it to the circumstances and format in which that agreement was presented. Merely containing a few lines of reference to statues or legal jargon does not render an arbitration agreement "unreasonably prolix or complex." *Davis v. Kozak*, 53 Cal. App. 5th at 907-08; *Martinez*, 2019 WL 7290492 at *6 ("some legal jargon" is to be "expect[ed] from a legal document"). Courts have upheld the inclusion of statutory references where "those references are necessary to define the claims covered by arbitration" and "the references are explained in lay terms." *Cisneros Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 592 (2021).

Although the size of the type font is not in the record, the font is of a normal and readable size.[4] The district court did not find otherwise. The agreement is also

---

[4] Indeed, even if the font were sized at 8- or 10-point, California law generally considers those sizes sufficient in the consumer context. *See, e.g.*, Cal. Civ. Code, § 1803.1 (8-point for retail installment contracts); Cal. Civ. Code, § 1749.5 (10-point

grouped topically by paragraph with space between each paragraph.[5]  2ER-94-95.

There are nine paragraphs spanning a little more than a page in a two-page document.

2ER-94-95.  There are no long, run-on sentences.  2ER-94-95.  Any "legal jargon"

is first introduced by plain language terms.  2ER-94-95.  The section is clearly la-

beled in bold and all caps as "agreement to arbitrate"; in bold and right above the

signature line is an acknowledgement that Ronderos read document and understood

that, by agreeing to arbitrate, he was waiving his jury right.  This presentation of the

terms is significantly different from that in *Kho* and *Davis*.[6]

 The district court held that the statutory references were similar those in *Kho*,

but this case is more akin to *Cisneros* where the statutory references were necessary

to define the scope of arbitration and first explained in lay terms.  The second para-

graph defines "Employment Claims" and first states these include claims of "dis-

crimination, harassment, or retaliation" before setting forth statutory references by

way of example.  2ER-94-95.  The statutory references are approximately three lines

---

for gift certificates); Cal Fin. Code, § 22603 (10-point for written statements to pro-
spective borrowers).  The *Kho* and *Davis* cases also did not mention the font size.

[5] The formatting is similar to the formatting of the district court's opinion.

[6] The full text of the provisions at issue in those cases are not in the opinions.  How-
ever, the underlying *Kho* briefing is available on Westlaw and a copy of the arbitra-
tion agreement in its original form is available at page 85 of the pdf of the original
image.  *See* Combined Respondent's Brief and Cross-Appellant's Opening Brief,
*OTO, LLC v. Kho*, 2016 WL 7432641 (Cal. App. 1 Dist. Dec. 19, 2016).  The format
in *Kho* is easily visually distinguishable from the format of the agreement here.

of text and are "reasonably understood in context to refer to various anti-discrimination laws." *Martinez*, 2019 WL 7290492 at *6 (distinguishing *Kho*).

In fact, shortly before the district court held the statutory references created procedural unconscionability, 1ER-9, the court relied on the lack of statutory and case references to find the cost splitting provision procedurally unconscionable. 1ER-8-9 ("Plaintiff would have had no real ability to identify which statutes or controlling case law governed the attorneys' fees provision, and as a result, would have had no understanding of its practical effect."). The district court thus inconsistently held the inclusion of statutory references is unconscionable because it adds legal jargon, but then held the failure to include statutory references is unconscionable because without legal training Ronderos would have no way to identify potentially applicable statutes and caselaw.

The cost sharing provision here also differs in significant respects from the problematic one in *Kho*. The *Kho* provision set forth: "If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2." 8 Cal.5th at 128. Unlike the one in *Kho*, the provision here does not rely on a reference to the statute, but instead states in plain language that costs will be split equally absent conflicting statutory provisions or caselaw. Moreover, unlike in *Kho*, the provision here states "[i]f such a conflict

exits, the costs of the arbitration and the arbitration fees will be paid by [Appellants.]" 2ER-95. The agreement simply sets forth in plain language the rule from *Armendariz* that "the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal.4th at 110-11. Far from requiring legal training to interpret, Ronderos was notified in simple language without legal jargon of the rule from the case. The district court was incorrect to conclude the cost-splitting provision created surprise for Ronderos.

Finally, later in the district court's analysis of substantive unconscionability, the district court claims the choice of law clause (which was not substantively unconscionable) "bolster[s] the Court's conclusion that the Contract is procedurally unconscionable." 1ER-11. The district court concluded it would be unable to ascertain the "practical effect" without undertaking a "close read" of each statute, which "would require a painstaking comparison of both the federal and the Indiana arbitration acts to determine which law applies to any given issue." 1ER-11. With due respect, the district court misapprehended and needlessly complicated the analysis needed. The choice of law clause provides that the FAA controls the agreement and the Indiana Uniform Arbitration Act would only apply if the FAA were inapplicable or it did not address a subject. *See* 2ER-95. There is no argument here that the FAA does not apply and the district court acknowledged the "FAA is not silent"

about conducting an unconscionability analysis under state law. *See* 1ER-10. Choice of law clauses are favored under California law. *Harris v. Bingham McCutchen LLP*, 214 Cal. App. 4th 1399, 1404 (2013) ("California strongly favors enforcement of choice-of-law provisions, . . . and its courts have upheld application of other states' internal statutes, rules and laws to arbitration contracts."). The provision here does not create any surprise because it simply selects a default of the FAA and a backup of the Indiana Uniform Arbitration Act in the rare circumstance where the FAA does not apply.

The district court erred in being overly willing to find similarities between the arbitration agreement here and the one in *Kho*. Any superficial similarities were far outweighed by substantive differences in the format and presentation of the terms. Both state and federal courts in California have rejected finding arbitration agreements procedurally unconscionable under *Kho*'s reasoning in similar circumstances. Even the district court acknowledged that "the Contract's substance is somewhat less oppressive and surprising than the agreements in *Kho* and *Davis*, which were both written in a block text, single paragraph format that 'challenge[d] the limits of legibility.'" (quoting *Kho*, 8 Cal. 5th at 129; *Davis*, 41 Cal. App. 5th at 671). But the district court should have gone further and found *Kho* did not provide any basis

for procedural unconscionability because there are material differences here, as other California courts analyzing and applying *Kho* have done.[7]

This Court should hold the district court erred in finding there was any procedural unconscionability above the minimal amount that arises from the arbitration agreement being an adhesion contract.

## II. The District Court Erred By Not Severing The Two Provisions It Found Substantively Unconscionable.

Ronderos argued that four provisions were substantively unconscionable: (1) the choice of law clause, 2ER-66-67; (2) the cost shifting provision, 2ER-68-69; (3) the shortened statute of limitations, 2ER-69; and (4) the lack of mutuality because Appellants were allowed to seek preliminary injunctive relief outside of arbitration, 2ER-69-70. The district court rejected Ronderos's argument that the choice of law clause and cost shifting provision were substantively unconscionable.[8] 1ER-10. Appellants had argued that, even if the remaining two provisions were substantively unconscionable,[9] they should have been severed as collateral to the agreement and

---

[7] Again, Ronderos did not even argue the arbitration agreement was unconscionable under *Kho*'s reasoning.

[8] Ronderos did not file a cross-appeal and any argument that the district court erred in this analysis is outside the scope of the appeal. *See Turpen v. City of Corvallis*, 26 F.3d 978, 980 (9th Cir. 1994) (an appellee who fails to file a cross-appeal cannot attack a judgment with a view towards enlarging his own rights).

[9] Appellants did not concede the unconscionability of these provisions. *See* 2ER-55 ("These provisions, even if substantively unconscionability as independent terms,

because the agreement contained a severance clause. 2ER-55. The district court

went beyond the arguments Ronderos raised and found additional grounds for a lack

of mutuality related to the so-called "notice" provision in the statute of limitations

clause. *Compare* 2ER-69-70 *with* 1ER-12-14. The district court then refused to

sever the two provisions at issue and found the entire arbitration agreement uncon-

scionable and unenforceable. 1ER-14-21. This was error.

### A.  The district court erred in the breadth of the lack of mutuality it found in its analysis of substantive unconscionability.

The district court found two grounds for substantive unconscionability: (1) an

improper shortening of the statute of limitations based on the one-year period Ron-

deros had to mail his claim for arbitration, 1ER-12; and (2) a lack of mutuality be-

cause three clauses were improperly one-sided, 1ER-12-14. Ronderos had only ar-

gued that the limitation on preliminary injunctive relief lacked mutuality. 2ER-69-

70. The district court, without briefing on the issue, expanded its analysis and held

that the sentence providing that Ronderos had to mail the alternative dispute request

form within one year, lacked mutuality as to (1) the time period and (2) notification

requirements. 1ER-12-14. The district court erred in the degree of the lack of mu-

tuality it found in these provisions.

---

are properly severed from the agreement, with the remainder of the agreement en-
forced pursuant to its terms."); 2ER-56 ("[t]he two potentially unconscionable pro-
visions in this case").

Substantive "unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.'" *Sanchez*, 61 Cal.4th at 911 (quoting *Sonic–Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1160 (2013)). The terms must be "unreasonably favorable to the more powerful party." *Baltazar*, 62 Cal.4th at 1244. "Not all one-sided contract provisions are unconscionable," a provision must be "overly harsh," "unduly oppressive," "unreasonably favorable" to be substantively unconscionable. *Sanchez*, 61 Cal.4th at 911.

As noted above, as to lack of mutuality, Ronderos only raised the issue of a lack of mutuality as to the provision that allowed only Appellants to seek preliminary injunctive relief. Yet, the district court faulted the Appellants for failing to offer any explanation for the lack of mutuality in the so-called "notice" and "statute of limitations" provision.[10] 1ER-13.

### 1. The district court erred in the amount of unconscionability it found in the "notice" and "statute of limitations" provisions.

The provision that required Ronderos to mail an arbitration request form within one year of when his claim arose is not objectionable due to a lack of mutuality. This provision instructed on how to initiate an arbitration. Without adequate

---

[10] Ronderos's argument that a one-year time period was an unconscionable shortening of the limitations period is a distinct argument from the district court's holding that the provision is unconscionable because it only applies to Ronderos and not Appellants. Ronderos argued the former not the latter. 2ER-69.

direction on how to initiate arbitration, Appellants risked the court finding the agreement unconscionable for failing to inform Ronderos of how to initiate the arbitration. *See Kho*, 8 Cal.5th at 130-31 ("the agreement does not explain how to initiate arbitration"). The district court characterized these instructions as a "notice" provision and found it lacked mutuality because it only applied to Ronderos. 1ER-18; *see also* 1ER-12-13.

But the case the district court relied on in finding this procedure unconscionable addressed a completely different scenario. 1ER-13 (citing *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 627 (2015)).[11] In *Carlson*, the request form that only the employee had to fill out did not initiate the arbitration, but instead a mediation prior to the arbitration. *Id.* By contrast, the employer could immediately initiate arbitration without requesting mediation. *Id.* This scheme created unfairness to the employee because it amounted to "mandatory pre-arbitration settlement efforts" without an attorney present. *Id.* at 635.

Here, there was no evidence or indication that mailing the "Alternative Dispute Resolution Request Form" did anything other than initiate the arbitration. This is not the sort of provision that is so one sided as to be "overly harsh" or "unduly oppressive" to Ronderos or "unreasonably favorable" to Appellants. Appellants had the information on how to initiate the arbitration; Ronderos did not.

---

[11] No party cited or discussed *Carlson* in the district court.

And, even if ultimately substantively unconscionable, the one-year time period to submit the arbitration request was also not without benefit to Ronderos. A one-year period in which to make the demand ensures that Ronderos timely files claims before his statute of limitations runs. *See, e.g.*, Cal. Gov't Code § 12960 (setting forth a one-year limitations period for FEHA claims in certain instances). Appellants, as the more sophisticated parties, are more likely to have knowledge of the relevant statute of limitations and this provision encourages employees to timely bring their claims given some of California's limitations periods.

### 2. The district court erred in the amount of unconscionability it found in the preliminary injunction carve out.

Finally, the district court improperly disregarded Appellant's explanation of the business reason for why Appellants were allowed to seeking temporary injunctive relief but employees were not. 1ER-13-14. As the provision itself explains, the provision was drafted "to prevent [an employee] from violating a confidentiality agreement or disclosing trade secrets." 2ER-95. These are claims where a party often finds itself in court seeking a temporary restraining order or preliminary injunctive relief. Claims an employee brings, such as "retaliat[ion] or discrimination[ion]," 2ER-94, are far less likely to require emergency injunctive relief because damages are generally a sufficient remedy. *C.f., e.g.*, *Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1320 (9th Cir. 1982) (no abuse of discretion to award dam-

ages in lieu of permanent injunctive relief in age discrimination case). In both instances, to litigate the merits of these categories of claims and receive damages or permanent injunctive relief, the Appellants and Ronderos need to submit their claims to arbitration. *See* 2ER-94-95.

The district court read *Abramson v. Juniper Network, Inc.*, 115 Cal. App. 4th 638 (2004), far too broadly. 1ER-13. The carve out in *Abramson* was not limited to preliminary injunctive relief but extended to any "employee's breach of covenants" and it was therefore "designed to protect only the employer's interests" because it only subjected the employee's claims to arbitration. *Abramson, 115 Cal. App. 4th* at 665-66. The employer, in essence, would not need to submit to arbitration at all the way the provision defined damages and carved out certain relief, such as injunctive relief (preliminary or permanent) and specific performance. *Id.*

The carve out here is far more limited. It only exempts Appellants' claims in certain circumstances and only for a limited duration. Appellants will eventually need to submit to arbitration the claims that form the basis for interim injunctive relief. Similarly, the carve out in *Haugh v. Barrett Bus. Servs., Inc.*, which the district court also relied upon, was not limited to preliminary injunctive relief. 16-CV-02121-VC, 2017 WL 945113, at *2 (E.D. Cal. Mar. 1, 2017). And there, the district court found the injunctive relief provision was severable, especially as there was no

26

evidence the employee was harmed by the carve out. *Id.* (citing *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 848 (N.D. Cal. 2012)).

The use of a carve out to protect proprietary information and trade secrets is a legitimate business purpose that is proper even if it indicates some lack of mutuality. "[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 451 (2020) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1536 (1997)). The district court misinterpreted *Lange* because the court there explicitly held the provision at issue "lacks mutuality" but the "reasonable justification for this lack of mutuality was evident on the provision's face." *Id.* The provision stated it was "created for the purpose of protecting [the employer's] confidential and proprietary information." *Id.* Similarly here, the preliminary injunction carve out envisions its use "to prevent [an employee] from violating a confidentiality agreement or disclosing trade secrets." 2ER-95. The district court's characterization of *Lange*'s equitable relief provision as not "one-sided," *see* 1ER-14, came from the discussion of a different equitable relief provision in a different agreement. *See* 46 Cal. App. 5th at 449-50 (discussing the different equitable relief provisions in the PIA agreement and the arbitration agreement).

*******

In sum, the district court vastly overstated any lack of mutuality in the arbitration agreement. The preliminary injunction carve out is far more limited than the provisions at issue in the cases the district court relied on, as Appellants will still need to submit any such claims to arbitration, and there is a legitimate business reason for the temporary relief carve out. As to the provision instructing Ronderos where to mail his request for arbitration, it did not create a lack of mutuality that was unduly oppressive to Ronderos or unreasonably favorable to Appellants. Even the one-year time period to mail the claim benefits Ronderos by giving him some potentially helpful statute of limitations protection. This Court should hold the district court erred in the amount of substantive unconscionability that it found based on a lack of mutuality.

### B.   The provisions at issue were collateral and should have been severed.

By overstating the procedural and substantive unconscionability, the district court adversely influenced its decision not to sever unconscionable provisions. Severance of any unconscionable provisions was required both by the terms of the contract and under California law.

California authorizes severance of unconscionable provisions in arbitration agreements. Cal. Civil Code § 1670.5(a); *see also* Cal. Civ. Code § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the

rest."). "[A] court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance." *Serafin, LLC v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 183-84 (2015). If the provision that is unlawful "is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz*, 24 Cal.4th at 124.

Even if there is more than one unconscionable provision, severance should still be considered—"the presence of multiple unconscionable clauses is merely one factor in the trial court's inquiry." *Lange*, 46 Cal. App. 5th at 454. "[T]he dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon*, 846 F.3d at 1273; *Lange*, 46 Cal. App. 5th at 455 (agreeing with and quoting *Poublon*). Such "permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz*, 24 Cal.4th at 124-25.

Apart from California law, the arbitration agreement itself contains a severability clause by which Ronderos and Appellants agreed that any provision found to be unlawful "shall be stricken" and the "remainder of [the] Agreement shall be en-

forced." 2ER-95. Severability "clauses evidence the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid or unlawful." *Baeza v. Superior Court*, 201 Cal. App. 4th 1214, 1230 (2011). The presence of a severability clause "makes severance more feasible." *Smith v. Vmware, Inc.*, No. 15-CV-03750-TEH, 2016 WL 54120, at *6 (N.D. Cal. Jan. 5, 2016); *see also Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 632 (N.D. Cal. 2019) (same); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (differentiating the case from others where severability clause not present).

### 1. The district court erred in finding the entire agreement was permeated by illegality.

The arguably unconscionable provisions at issue are collateral to the arbitration agreement, as evidenced by the fact they can be severed without reforming or augmenting the agreement. That means under California law they should be severed. The district court erred in concluding the agreement was so permeated with illegality that severance was not appropriate. 1ER-14-21.

*Armendariz* instructs that the key indicator as to whether a contract is tainted with illegality is whether a provision can be removed without reforming the contract. 24 Cal.4th at 124-25. Here that is easily done. Taking into account a proper analysis of unconscionability, there is both low procedural and substantive unconscionability.

The only procedural unconscionability arises from the adhesive nature of the contract and the only provision with any substantive unconscionability is the one-year limitation to mail the arbitration request form. The phrase "within one year after the date my claim arose or my claim will be waived" can be removed without otherwise altering the character of the agreement or requiring additional terms. *See Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1275 (2017) ("the one aspect in which the arbitration provision is substantively unconscionable is readily remedied—by severing out the exception for claims arising from the confidentiality agreement.").

Even if this Court agrees with the district court that the mailing instructions and the preliminary injunction carve out are substantively unconscionable for a lack of mutuality (it should not), those clauses can also be excised without altering the contract or requiring reformation.[12] This is consistent with this Court's precedent in *Poublon*. The district court improperly distinguished *Poublon*. 1ER-19-20. First, the district court was incorrect that more than minimal procedural unconscionability exists, 1ER-19, so *Poublon* is on point in that respect. *See* 846 F.3d at 1273–74.

---

[12] For the so-called "statute of limitations" provision, that would remove the entirety of the sentence instead of just the last clause that refers to the "one year" period. For the preliminary injunction carve out, that would remove the following language: "(4) Claims that the Company may have against me for preliminary Injunctive relief, such as to prevent me from violating a confidentiality agreement or disclosing trade secrets. However, claims that the Company retaliated or discriminated against me for filing a state employment insurance claim shall be subject to arbitration." *See* 2ER-95.

The agreement would not need to be rewritten "in large portions" "for it to be even remotely comprehensible to a layperson like Plaintiff" as the district court claimed. 1ER-20; *see supra* Part I.

Nor was the district court correct that a provision that allows an employer but not the employee access to the judicial forum for certain claims so "taint[s] the central purpose of the Contract," 1ER-20, that the provision should not be severed. This Court in *Poublon* reversed a decision that refused to sever a similar provision. 846 F.3d at 1273 (finding "the portion of the dispute resolution provision that permits C.H. Robinson, but not Poublon, to seek judicial resolution of specified claims" should be severed). The facts of this case are analogous to the provision this Court found severable in *Poublon*. And, unlike *Poublon*, where modification, not severance of the PAGA claim was necessary, here no modification is required—all potentially problematic provisions can be cleanly excised.

The cases the district court relied on (at 1ER-16-18) differ in material ways in how those agreements created systematic efforts to impose an inferior forum on employees. In *Davis v. Kozak*, the systemic effect arose from the combination of discovery limitations that would not allow the employee to vindicate his rights and a carve out that only applied to employer claims. 53 Cal. App. 5th at 917 (finding unenforceable because the provisions in combination allowed an employer to "litigate the types of claims it would most likely bring against employees in civil court

with the full panoply of discovery at its disposal," whereas employees would have to litigate even the most factually complex claims under very restrictive discovery obligations).

In *Ali v. Daylight Transportation, LLC*, there was significantly more procedural unconscionability than here. 59 Cal. App. 5th 462, 474 (2020). The employees were presented the agreement as a condition of continued employment under time pressure, the arbitration provision appeared near the end of a 15-page contract and was the second of three clauses set forth under a heading entitled, "Administrative and Related Matters." Furthermore, the agreement did not articulate or attach the AAA rules under which the arbitration would proceed. *Id.* at 474-76. Among the provisions at issue was a cost sharing provision in the AAA rules the employees were unaware of when signing the agreement. *Id.* at 476. Thus, considering the at least "moderate level of procedural unconscionability" in combination with three provisions favoring the employer, the court held the agreement was "sufficiently unfair." *Id.* at 481-82.

In *Subcontracting Concepts (CT), LLC v. De Melo*, the agreement had a "moderate level of unconscionability" and also would have "deprive[d the employee] of the protections provided in the *Berman* hearing process, replacing those protections with costs and obstacles he would not otherwise face." 34 Cal. App. 5th 201, 214-

16 (2019).  In *Nyulassy v. Lockheed Martin Corp.*, there was only unilateral arbitration for the employee, a mandatory pre-arbitration employer-controlled mediation process, and a shortened 180-day statute of limitations.  120 Cal. App. 4th 1267, 1282-83 (2004).  In *Parada v. Superior Court*, the agreement included procedures that had been held at the time of signing to be unconscionable due to the costs associated with requiring three JAMS arbitrators being "so prohibitively expensive" and which did not allow claimants to reduce costs by consolidation or joinder of claims. 176 Cal. App. 4th 1554, 1586 (2009).  In *Mercuro v. Superior Court*, the employer threatened to strip the employee of his accounts unless he signed the agreement, the arbitral forum would not afford the statutory rights the employee would be entitled to if he litigated his claim in court, there was an unlawful cost-sharing provision, and the employer was a "repeat player" in front of the arbitrator.  96 Cal. App. 4th 167, 178 (2002).  And, finally, in *Fitz v. NCR Corporation*, the discovery provisions were both procedurally and substantively unconscionable where employees were limited to two depositions under the rules and the discovery provision was not actually mutual because employers typically have documents in their possession.  118 Cal. App. 4th 702, 716 (2004).

The arbitration clause in the present case simply does not resemble any of these cases.  The agreement would not deprive Ronderos of meaningful discovery or any protections associated with special procedural hearings.  The agreement is

part of a simple, two-page contract that clearly labeled the arbitration portion. Only temporary injunctive relief is carved out and Appellants would still have to arbitrate claims that were the basis for temporary relief. There was no pre-arbitration mediation with the employer. Ronderos was not threatened with adverse employment consequences for not signing. There was no provision, such as requiring a three-arbitrator panel, that would be cost-prohibitive to Ronderos bringing a claim or allegation that Appellants are repeat disputants familiar to the arbitrators.

Courts routinely enforce agreements by severing provisions that are similar to the two at issue here and even where there are more numerous unconscionable provisions. *See Buchsbaum v. Digital Intel. Sys., LLC*, No. 20-CV-00706-BAS-AGS, 2020 WL 7059515, at *9 (S.D. Cal. Dec. 2, 2020) (severing three unconscionable provisions; choice of law provision, forum selection provision and injunctive or equitable relief carve out for employer's claims); *Pereyra v. Guaranteed Rate, Inc.*, No. 18-CV-06669-EMC, 2019 WL 2716519, at *10–11 (N.D. Cal. June 28, 2019) (severing four unconscionable terms; injunctive relief carve out, attorney's fee, choice of law, and forum selection); *Wu v. JPMorgan Chase Bank, N.A.*, No. LA CV19-00363 JAK (SKx), 2019 WL4261880, at *14 (C.D. Cal. Aug. 5, 2019) (severing four unconscionable provisions; punitive damages bar, waiver of right to file administrative charge, shortened statute of limitations period to one year, and injunctive relief carve out); *Chun Ping Turng*, 371 F. Supp. 3d at 631-33 (severing two

provisions; exclusion of employer claims, including injunctive relief carve out, and choice of law); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 432-34 (N.D. Cal. 2018) (severing three unconscionable provisions; forum selection and choice of law clause, attorney's fee provision, and cost-splitting provision); *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *11 (N.D. Cal. Mar. 14, 2016) (severing two provisions; a choice of law and forum selection); *Pope v. Sonatype, Inc.*, 5:15-CV-000956-RMW, 2015 WL 2174033, at *6-7 (N.D. Cal. May 8, 2015) (severing three unconscionable terms; an injunctive relief carve out, a forum selection clause, and a requirement that the plaintiff pay his own attorney's fees); *Galen v. Redfin Corp.*, No. 14-CV-05229-TEH, 2015 WL 7734137, at *10 (N.D. Cal. Dec. 1, 2015) (severing unconscionable attorney's fees, forum selection and choice of law provisions); *Bermudez v. PrimeLending*, No. LA CV12-00987 JAK (Ex), 2012 WL 12893080, at *14 (C.D. Cal. Aug. 14, 2012) (severing four provisions including a bilateral shifting of attorneys' fees and a unilateral exclusion of employer's claims from arbitration); *Grabowski*, 817 F.Supp.2d at 1179 (S.D. Cal. 2011) (severing three unconscionable terms; a "carve out" provision stating that the arbitration agreement did not apply to the employer's claims that included a request for injunctive or equitable relief, an attorney's fee provision, and a confidentiality provision).

Even if the district court had agreed (and it did not) with all four provisions Ronderos claimed were substantively unconscionable, these cases counsel that severance was still the appropriate remedy. Here, this Court should at most find one provision substantively unconscionable, but even if it agrees with the district court that both the statute of limitation provision (and both clauses therein) and the preliminary injunction carve out were unconscionable, the district court still erred in not severing the provisions.

### 2. The arbitration agreement's severability clause required the district court to sever any unlawful provisions.

Because the parties contracted to sever any illegal provisions, the district court in these circumstances lacked discretion under California law to do anything other than sever the unconscionable provisions. The district court's rationale for not enforcing the arbitration agreement based on the policy underlying the caselaw and statutes is inapplicable where severance was also required under the contract. *See* 1ER-17-18, 20-21.

The district court refused to enforce the severability clause: "although the Contract contains a severability clause, the Court is loath to give it much weight after having determined that the Contract itself and the manner of its presentation did not promote Plaintiff's voluntary or informed agreement to the Arbitration Clause's terms." 1ER-20-21. As discussed *supra* Part I, this conclusion is incorrect. There was no reason to upset the parties' contractual expectations.

The district court also refused to sever any substantively unconscionable provision because it did not fall within the policy rationale articulated in *Armendariz*. *Armendariz* observed that "[t]wo reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law": (1) "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement — particularly when there has been full or partial performance of the contract"; and (2) "to conserve a contractual relationship if to do so would not be condoning an illegal scheme." 24 Cal.4th at 123-24. The district court cited a case where the court determined that where an employment relationship had ended, such that, only the former employee would have to be pursuing claims in the arbitral forum, these considerations cut against severance. 1ER-17-18 (citing *Abramson*, 115 Cal. App. 4th at 667).

Relying on *Abramson*, the district court held "[s]everance would only give Defendants an undeserved benefit to Plaintiff's detriment." 1ER-18. But this assumes that the arbitral forum itself (as opposed to issues with specific provisions in the arbitration agreement) is somehow less advantageous, as severance would cure any illegality. This shows the sort of hostility towards arbitration that courts must guard against. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

Moreover, unambiguous statutory language favors severing illegal contractual provisions. Cal. Civ. Code § 1599. This is the policy of the law to be served and

advanced, especially given that arbitration is favored. *See Armendariz*, 24 Cal. 4th at 97-98, 114 (2000) ("California law, like federal law, favors enforcement of valid arbitration agreements.").

Moreover, in this case, the parties contracted to strike any unconscionable provisions from the agreement. 2ER-55-58. That agreement should be enforced and not displaced by a policy-driven way of thinking that is potentially relevant when there is no severability clause and agreement.

This Court should hold that given the contractual severability clause the district court erred in refusing to sever any unconscionable provisions and the arbitration agreement is enforceable.

## III. The District Court Erred In Holding The Arbitration Agreement Unenforceable.

If the district court had properly severed the substantively unconscionable provisions, the arbitration agreement should have been enforced. Even assuming the agreement did contain a "moderate" degree of procedural unconscionability, without substantively unconscionability, the agreement was enforceable. *See Diaz*, 34 Cal. App. 5th at 132 ("Both elements must be present for a court to refuse enforcement."). But here there was only minimal procedural unconscionability and minimal substantive unconscionability—under a sliding scale analysis the arbitration agreement cannot be said to be so permeated with illegality that it is unenforceable. This Court should hold that the two potentially substantively unconscionable

provisions at issue are severable, rendering the arbitration agreement valid and en-

forceable. *See Poublon*, 846 F.3d at 1273-74.

## CONCLUSION

This Court should reverse the judgment, declare the arbitration agreement

valid and enforceable, and compel Ronderos to arbitrate his claims as he agreed.

Dated:  December 21, 2021          Respectfully submitted,

                                                  MORGAN, LEWIS & BOCKIUS LLP

By:  *s/ Thomas M. Peterson*
             Thomas M. Peterson
             Counsel for Appellant
             USF REDDAWAY, INC.
             YELLOW CORPORATION

## STATEMENT OF RELATED CASES

In accordance with Ninth Circuit Rule 28-2.6, I hereby state that I am unaware

of any related cases currently pending in this Court.

By: *s/ Thomas M. Peterson*
Thomas M. Peterson

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,070 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point, Times New Roman font.

By: *s/ Thomas M. Peterson*
Thomas M. Peterson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on December 21, 2021.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: *s/ Thomas M. Peterson*
Thomas M. Peterson