**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE EMILIO RONDEROS, an individual, | No. 21-55685 |
| *Plaintiff-Appellee*, | D.C. No. 5:21-cv-00639-MWF-KK |
| v. | |
| USF REDDAWAY, INC., an Oregon Corporation; YELLOW CORPORATION, FKA YRC Worldwide, Inc., | OPINION |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted July 11, 2022[*]
Pasadena, California

Filed August 22, 2024

---

[*] Because Defendants-Appellants USF Reddaway, Inc. and Yellow Corporation filed for bankruptcy, this matter was automatically stayed on September 6, 2023. *See* 11 U.S.C. § 362. On July 29, 2024, based on a joint stipulation of the parties, the Bankruptcy Court modified the stay to allow proceedings in this matter to resume.

Before: Mark J. Bennett and Jennifer Sung, Circuit Judges, and Elizabeth E. Foote,[**] District Judge.

Opinion by Judge Sung;
Dissent by Judge Bennett

## SUMMARY[***]

### Arbitration

The panel affirmed the district court's denial of a motion brought by defendants USF Reddaway, Inc. and Yellow Corporation (collectively "Reddaway") to compel arbitration of plaintiff Jose Emilio Rondero's employment-related claims.

Applying California law, the panel held that Reddaway's arbitration agreement was procedurally unconscionable to a moderate degree because the agreement was adhesive, the circumstances under which Reddaway required Ronderos to sign the agreement involved significant oppression, and the arbitration agreement involved some surprise because the cost-splitting provision is substantively opaque. The panel also held that two of the arbitration agreement's provisions were substantively unconscionable: (1) the one-sided filing provision, which imposes notice requirements and a one-year statute of limitations only on Ronderos; and (2) the one-

---

[**] The Honorable Elizabeth E. Foote, United States District Judge for the Western District of Louisiana, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sided preliminary injunction carve-out, which exempts from arbitration only Reddaway's claims for preliminary injunctive relief.

The panel also concluded that the district court did not abuse its discretion by declining to sever the unconscionable provisions and enforce the remainder of the agreement.

Dissenting, Judge Bennett would hold that the district court abused its discretion because it misapplied California law in declining to sever the collateral provisions from an arbitration agreement that includes a severability clause. It should have severed those provisions and granted Reddaway's motion to compel arbitration.

Judge Bennett wrote that both the majority and the district court decisions evince the type of "judicial hostility to arbitration" that led Congress to pass the Federal Arbitration Act ("FAA"). *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649 (2022). Judge Bennett also wrote that both decisions are directly contrary to "the FAA's edict against singling out [arbitration] contracts for disfavored treatment." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017).

---

## COUNSEL

Alireza Alivandivafa (argued), Alireza Alivandivafa, Los Angeles, California; Azad Marvazy, Light Law Group APC, Los Angeles, California; for Plaintiff-Appellee.

Daniel Saunders (argued), Kasowitz Benson Torres LLP, Los Angeles, California; Jason S. Mills and Samson C. Huang, Morgan Lewis & Bockius LLP, Los Angeles, California; Catherine Eschbach, Morgan Lewis & Bockius

LLP, Houston, Texas; Thomas S. Peterson, Morgan Lewis & Bockius LLP, San Francisco, California; for Defendants-Appellants.

---

## OPINION

SUNG, Circuit Judge:

Defendants USF Reddaway, Inc. and Yellow Corporation, FKA YRC Worldwide, Inc. (collectively, "Reddaway"), appeal the district court's denial of their motion to compel arbitration of Plaintiff Jose Emilio Ronderos's employment-related claims. We conclude that Reddaway's arbitration agreement is both procedurally and substantively unconscionable. We also conclude that the district court did not abuse its discretion by declining to sever the unconscionable terms. Thus, we affirm the district court's denial of Reddaway's motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

When Ronderos applied to work for Reddaway as a line haul manager, Reddaway required him to sign a document titled "Candidate's Statement," which is a pre-printed document that contains the arbitration agreement at issue in this case. Reddaway presented that pre-printed document to Ronderos on a take-it-or-leave-it basis, as a part of the job application. According to Ronderos, Reddaway gave him

"no choice" and "pushed" him to sign it "immediately, on site."[1] Reddaway does not dispute Ronderos's account.

The Candidate's Statement is a two-page, single-spaced document. Toward the bottom of the first page, a bold heading in all-capital letters states, "AGREEMENT TO ARBITRATE." The arbitration agreement requires all "Employment Claims" to be resolved through binding arbitration, but not "Excluded Claims." As defined by the agreement,

> "Employment Claims include, but are not limited to, claims of discrimination, harassment, retaliation and claims for benefits brought against the Company . . . whether based on local, state or federal laws or regulations, or on tort, contract, or equitable law, or otherwise. By way of example only, Employment Claims include claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights of 1964 [*sic*], as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employment Retirement Income Security Act, and the Fair Labor Standards Act."

"Excluded Claims"—the claims that are exempt from arbitration—include claims that Reddaway "may have against [Ronderos] for preliminary injunctive relief, such as

---

[1] Ronderos described the circumstances under which he signed the arbitration agreement in a declaration filed in support of his opposition to Reddaway's motion to compel arbitration.

to prevent [Ronderos] from violating a confidentiality agreement or disclosing trade secrets."[2]

The arbitration agreement includes a filing provision that imposes two procedural requirements on Ronderos—but not Reddaway: (1) a notice requirement that specifies Ronderos must send Reddaway notice of a claim using a particular form in a particular manner, and (2) a one-year statute of limitations that starts to run the date the claim arises. Further, the agreement expressly states that Ronderos's failure to comply with the filing provision's procedural requirements will result in the waiver of Ronderos's claims. The filing provision states in full: "I [Ronderos] understand that I must file an Alternative Dispute Resolution Request Form by sending it certified mail to Jack Peak, Vice President, Labor and Employment Law & Litigation, YRC Worldwide, Inc, 1077 Gorge Boulevard, Akron, OH 44310, within one year after the date my claim arose or my claim will be waived."

The arbitration agreement also contains three other provisions that are at issue in this case. First, a choice-of-law provision states that "the arbitration and this Agreement" are controlled by the Federal Arbitration Act (FAA) and, where the FAA is silent or inapplicable, the Indiana Uniform Arbitration Act (IUAA). Second, a cost-splitting provision requires the parties to equally share the cost of arbitration and arbitrator fees, "unless other express statutory provisions or controlling case law conflict with this

---

[2] The agreement also exempts claims that are within the exclusive jurisdiction of a federal or state agency (claims for benefits under state employment insurance programs and claims under the National Labor Relations Act that are brought before the National Labor Relations Board), and claims that could be brought as a grievance under a collective bargaining agreement.

allocation and require the payment of costs and fees by the Company." Third, a severability provision states that, if "any portion of this Agreement is held to be in conflict with a mandatory provision of applicable law, the conflicting portion shall be stricken and the remainder of this Agreement shall be enforced."

Ronderos was hired and worked for Reddaway for two and a half years. Ronderos alleges that, shortly after he was diagnosed with cancer and took a medical leave of absence, Reddaway terminated him. Ronderos filed claims in California state court against Reddaway for age and disability discrimination, retaliation, and failure to accommodate his disability under California's Fair Employment and Housing Act (FEHA), California Government Code §§ 12900 *et. seq.*, and failure to pay unpaid wages in violation of California state law, among other claims.

After Reddaway removed the case to federal court, it filed a motion to compel arbitration. Ronderos opposed the motion, contending that the arbitration agreement is procedurally and substantively unconscionable under California law and, therefore, unenforceable.

Reddaway conceded that the arbitration agreement is a contract of adhesion—that is, it is a pre-printed form that Reddaway presented to Ronderos on a take-it-or-leave-it basis, with no opportunity for Ronderos to negotiate its terms. Reddaway also conceded that two of the agreement's provisions—the one-year statute of limitations for filing claims and the preliminary injunction carve-out—are unenforceable under California law. Reddaway argued, however, that the court should sever those provisions and

enforce the remainder of the agreement by compelling arbitration.

The district court concluded that the agreement is procedurally unconscionable to a moderate degree. The district court also concluded that the agreement contains multiple substantively unconscionable provisions, and that it lacks mutuality to a substantial degree. Finally, the district court declined to sever the unconscionable provisions.

On appeal, Reddaway concedes that the arbitration agreement is unconscionable to some extent but argues that the agreement is less unconscionable than the district court determined. Reddaway also argues that the district court abused its discretion by not severing the unconscionable terms.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 9 U.S.C. § 16. We review de novo whether an arbitration agreement is invalid because it is unconscionable. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010). We review the district court's decision not to sever the unconscionable provisions of the agreement for abuse of discretion. *Lim v. Tforce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Bridge Fund*, 622 F.3d at 1000).

## ANALYSIS

### I.  Unconscionability

Under the Federal Arbitration Act, generally applicable contract defenses, including unconscionability, may invalidate an arbitration agreement. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

To determine whether Reddaway's arbitration agreement is unconscionable, the parties agree that we apply California contract law. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010).

Under California law, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019). Thus, unconscionability "has both a procedural and a substantive element." *Id.* at 689–90 (internal quotation marks and citation omitted). "Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" *Id.* at 690 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable." *Id.* (internal quotation marks and citation omitted). Conversely, the higher the degree of procedural unconscionability, "the less substantive unfairness is required." *Id.* (citations omitted). The overarching question in all unconscionability cases is "whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 749 (Cal. 2015). The "unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *OTO*, 447 P.3d at 693 (internal quotation marks and citations omitted). As the party asserting unconscionability as a defense to the enforcement of the arbitration agreement,

Ronderos bears the burden of proving unconscionability. *Id.* at 690.

We conclude that the arbitration agreement between Reddaway and Ronderos is at least moderately procedurally unconscionable, and several of its terms are substantively unconscionable.

### A. Procedural Unconscionability

Under California law, "[t]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016) (internal quotation marks and citation omitted).

To determine whether a contract is procedurally unconscionable, we first ask "whether the contract is one of adhesion." *OTO*, 447 P.3d at 690 (internal quotation marks omitted) (quoting *Armendariz*, 6 P.3d at 689). A "contract of adhesion" is "a standardized contract [that is] imposed and drafted by the party of superior bargaining strength" and gives "the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 6 P.3d at 689 (internal quotation marks and citation omitted). Reddaway concedes that the arbitration agreement is a contract of adhesion and therefore "procedurally unconscionable to at least some degree." *Bridge Fund*, 622 F.3d at 1004. But, Reddaway argues that the agreement contains no more than a minimal degree of procedural unconscionability.

To determine whether the arbitration agreement involves more than "minimal" procedural unconscionability, we

consider "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 447 P.3d at 690.

Oppression means a "lack of negotiation and meaningful choice." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012) (internal quotation marks omitted) (quoting *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Ct. App. 2005)). "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO*, 447 P.3d at 690–91 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 182 Cal. Rptr. 3d 235, 249–50 (Ct. App. 2015)).

The circumstances under which Ronderos signed the arbitration agreement involved significant oppression. Reddaway admits that it required Ronderos to sign the pre-printed arbitration agreement as part of the job application process. "In both the prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression and overreaching." *OTO*, 447 P.3d at 691 (quoting *Armendariz*, 6 P.3d at 690). When an employer makes signing an agreement a condition of applying for employment, "the economic pressure exerted . . . on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration

requirement." *Armendariz*, 6 P.3d at 690.[3] Ronderos, who was applying for a line haul manager position, was not a highly-sought-after employee with any meaningful bargaining power.

Additionally, according to Ronderos's undisputed declaration, Reddaway pushed him to sign the contract immediately, on site. Ronderos did not know what arbitration was and did not understand many of the agreement's terms. Reddaway did not explain the agreement's terms to him. Reddaway does not claim that it gave Ronderos the opportunity to consult an attorney. California courts have found significant oppression based on similar circumstances in both pre- and post-hiring settings.[4] *See, e.g.*, *Ali v. Daylight Transp., LLC*, 273 Cal. Rptr. 3d 544, 554 (Ct. App. 2020) (finding "significant oppression" when employer required employees to sign agreements as a condition of employment without an opportunity to consult an attorney); *Baxter v. Genworth N. Am. Corp.*, 224 Cal. Rptr. 3d 556, 565 (Ct. App. 2017) (*disapproved on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520 (Cal. 2024) (finding high degree of oppression when

---

[3] The dissent disregards the California Supreme Court's conclusion that preemployment adhesive agreements are particularly oppressive, and takes the opposite position. *See* Dissent at 47 (asserting that the fact that Ronderos was required to sign the arbitration agreement as part of the job application process, rather than "after years of employment," weighs against finding procedural unconscionability). Because we are applying California law, we are not at liberty to disregard the Court's reasoning in *Armendariz*, and, in any event, we find the Court's reasoning more persuasive.

[4] The dissent asserts that Ronderos's declaration is not specific enough to support a finding of procedural unconscionability, Dissent at 44. The dissent ignores that Ronderos's declaration is uncontroverted.

employer presented agreement as a condition of continued employment on a take-it-or-leave-it basis, and employee lacked equal bargaining power).

We also find that the arbitration agreement involves some surprise. Surprise may occur when "the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum*, 282 P.3d at 1232 (internal quotation marks omitted) (quoting *Morris*, 27 Cal. Rptr. at 805). A contract may also involve surprise when its substance is "opaque." *OTO*, 447 P.3d at 691 (finding agreement involved surprise because its sentences were "complex [and] filled with statutory references and legal jargon").

Reddaway's arbitration agreement is not hidden in fine print or otherwise difficult to read. However, the agreement involves some surprise because the substance of its cost-splitting provision is very opaque.

The cost-splitting provision creates the impression that Ronderos must pay half the costs of arbitration and arbitrator fees, even though under California law, an employer may not require employees to pay such arbitration costs in an adhesive arbitration contract. *Id.* at 692 (citing *Armendariz*, 6 P.3d at 687). The provision states: "I understand that the costs of arbitration and arbitrator fees will be split equally between the Company and me unless other express statutory provisions or controlling case law conflict with this allocation and require the payment of costs and fees by the Company." The California Supreme Court assessed a substantially similar cost-splitting provision in *OTO* and concluded that it supported a finding of surprise. *Id.* OTO's cost-splitting provision, like Reddaway's, set a default rule that employees would bear some of the arbitration costs

14    RONDEROS V. USF REDDAWAY, INC.

unless "statutory provisions or controlling case law" required otherwise. *Id.* As the Court explained, "[a]lthough the agreement anticipate[d] that the 'controlling case law' of *Armendariz* would prevail over the [ ] default rule, [the employer's] obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities." *Id.* Reddaway's cost-splitting provision is opaque for the same reason.

Indeed, Reddaway's cost-splitting provision is even more opaque because it does not indicate which state's law controls the question of whether the cost-splitting default rule is enforceable, and it would be extremely difficult for a layperson like Ronderos to figure that out. [5] Additionally, the agreement includes a choice-of-law provision that complicates that issue. The choice-of-law provision states: "I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act ('FAA'). If for any reason the FAA does not apply or if the FAA is silent on the issue then the provisions of the Indiana Uniform Arbitration Act (Indiana Code 34-57-2), shall apply (to the extent they do not conflict with the FAA) and subject Employment Claims to arbitration." The FAA is silent on the issue of apportioning the costs of arbitration, and the IUAA indicates that costs are to be apportioned at the discretion of the arbitrator. *See* Ind. Code § 34-57-2-11. Ronderos argues that

---

[5] In *OTO*, the cost-splitting provision did not expressly state that California law was controlling, but it cited California Code of Civil Procedure section 1284.2 to establish its default rule, and other provisions of the agreement made the arbitration subject to the California Arbitration Act and other California rules of civil procedure, all of which indicated that California law would also control the enforceability of the cost-splitting provision's default rule. *See* 447 P.3d at 685–86.

an arbitrator would apply the IUAA and conclude that the cost-splitting default rule is enforceable.[6]

Fortunately, we do not need to determine how an arbitrator would resolve the question of which state's law controls the enforceability of the cost-splitting default rule. To determine whether the Reddaway agreement involves surprise, it is enough to note that the ambiguity of the cost-splitting provision, coupled with the choice-of-law provision, makes it difficult (even for a lawyer) to figure out whether Ronderos would have to pay half the arbitration costs or not. Consequently, the provision is procedurally unconscionable. *See Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 243 (Ct. App. 2015) (finding delegation clause, coupled with choice-of-law provision, was procedurally unconscionable because it was highly unlikely that a "layperson" would understand how arbitrability questions would be resolved under the agreement).

Reddaway argues that this provision "simply sets forth in plain language the rule from *Armendariz* that 'the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.'" (Quoting *Armendariz*, 6 P.3d at 687.) But there is no such plain statement in the agreement. If Reddaway did not intend to require California employees like Ronderos to split the cost of arbitration because such a requirement conflicts with California law,

---

[6] In *Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1285 (Ind. Ct. App. 2006), the state court held that an adhesive arbitration agreement that required a home purchaser to pay *all* arbitration costs was enforceable.

Reddaway could have made that clear in plain language.[7] Instead, Reddaway's agreement indicates only that the cost-splitting requirement will not apply *if* it conflicts with a statute or case law, without specifying that California law will control and without acknowledging that a conflict with California law actually exists.

Reddaway also argues that the cost-splitting provision is clearer than the cost-splitting provision in *OTO* because Reddaway's provision set the default rule by expressly stating that the costs will be split equally, while OTO's provision set the default rule only by referencing California Code of Civil Procedure § 1284.2. In that respect, Reddaway's provision is clearer. But the fact remains that in this case, as in *OTO*, Reddaway's "obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities." 447 P.3d at 692.

Moreover, because Reddaway's provision plainly states that "the costs of arbitration and arbitrator fees will be split equally" between the employee and Reddaway, it creates the impression that employees like Ronderos will have to pay significant costs if they file an arbitration claim. And, by creating that impression, the provision likely deters employees from filing claims—whether the default rule is actually enforceable against them or not.[8] As the California

---

[7] For instance, if Reddaway did not intend for the default rule to be enforced against California employees like Ronderos, Reddaway could have stated that the cost-splitting default rule "conflicts with the law of California and in arbitrations involving California employees, the costs of arbitration and arbitrator fees will be paid by the Company."

[8] The concern, shared by the district court, that a layperson in Ronderos's position would not understand the practical effect of the cost-splitting

Supreme Court recognized in *Armendariz*, "it is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters the exercise" of statutory rights. 6 P.3d at 687 (emphasis in original). Consequently, we agree with the district court that Reddaway's cost-splitting provision contributes to the procedural unconscionability of the agreement.

We note that Ronderos argues that the cost-splitting provision is also substantively unconscionable, despite the savings clause that makes the default rule unenforceable if it conflicts with controlling law. Specifically, Ronderos argues that, because of the choice-of-law provision, an arbitrator would apply Indiana law and conclude that the cost-splitting default rule is enforceable against him—which would make the cost-splitting provision substantively unconscionable under California law. In response, Reddaway argues that the savings clause means that the provision is not substantively unconscionable, citing *Jackson v. Rent-A-Center W., Inc.*, 581 F.3d 912, 919 (9th Cir. 2009), *rev'd on other grounds* 561 U.S. 63 (2010). In *Jackson*, we concluded that a similar fee-sharing provision was not substantively unconscionable because of its savings clause, which stated that "[i]n the event the law of the jurisdiction in which the arbitration is held requires a different allocation of fees and costs in order for this Agreement to be enforceable, then such law shall be followed." *Id. Jackson*, however, appears distinguishable for several reasons. In *Jackson*, the fee-sharing provision indicated which state's law would control the enforceability of its default rule by specifying that "the law of the

_____

provision is substantiated by record evidence. In his declaration, Ronderos averred that he was unable to pay the costs of arbitration "like the Defendant wants me to."

jurisdiction in which the arbitration is held" would control.
*Id.* at 919. As a result, it was reasonable to conclude that
Nevada law would control and that the fee-sharing default
rule would not be enforced against the plaintiff. *Id.* By
contrast, Reddaway's agreement is at best ambiguous about
which state's law would control the enforceability of the
cost-splitting provision's default rule. And unlike the
agreement in *Jackson*, Reddaway's agreement contains a
choice-of-law provision that, in Ronderos's view, means
Indiana law is controlling. We also note that, in *Jackson*, the
plaintiff "fail[ed] to address or counter" the argument that
the savings clause made the fee-sharing provision valid. *Id.*
at 919–20. But in this case, Ronderos has articulated a
colorable counterargument, as described above. Although
Ronderos presses this argument on appeal, we do not decide
whether Reddaway's cost-splitting provision is
substantively unconscionable because doing so would not
affect the outcome of this case.

In sum, we conclude that the Reddaway agreement is
adhesive; that the circumstances under which Reddaway
required Ronderos to sign the agreement involve significant
oppression; and that the agreement involves some surprise
because the cost-splitting provision is substantively opaque.
Consequently, we agree with the district court that there is at
least a moderate degree of procedural unconscionability in
this case. The Reddaway agreement does not appear to
involve as much oppression and surprise as the agreement in
*OTO*, which was both "visually impenetrable" and
substantively opaque. 447 P.3d at 691. But the California
Supreme Court concluded that the *OTO* agreement involved
an "*extraordinarily high degree* of procedural
unconscionability." *Id.* at 690 (emphasis added). In *Pinela*,
a California court of appeal found "more than the minimum

degree of procedural unconscionability that is always present with an adhesive contract," even though there was no "fraud or sharp practices," because one key provision was substantively opaque. 190 Cal. Rptr. 3d at 173–74. In this case, a key provision is similarly opaque and there is also oppression. That combination is enough to establish at least a moderate degree of procedural unconscionability. *See also Beco v. Fast Auto Loans, Inc.*, 302 Cal. Rptr. 3d 168, 180–81 (Ct. App. 2022); *Ali*, 273 Cal. Rptr. 3d at 555.

## B. Substantive Unconscionability

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001 (internal quotation marks omitted) (quoting *OTO*, 447 P.3d at 692). Because we find at least a moderate degree of procedural unconscionability, "closer scrutiny of [the agreement's] overall fairness is required." *OTO*, 447 P.3d at 690. When determining substantive fairness, the relevant question is whether one party used their superior bargaining position to impose terms that are "overly harsh, unduly oppressive, or unfairly one-sided." *Lim*, 8 F.4th at 1002 (citing *OTO*, 447 P.3d at 692–93). The "paramount" consideration is mutuality. *Abramson v. Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422, 436 (Ct. App. 2004). "Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability." *Id.* at 437 (internal quotation marks omitted) (quoting *Armendariz*, 6 P.3d at 692). Not all one-sided terms are unconscionable, but the party seeking to enforce a one-sided term must provide "at least some reasonable justification for such one-sidedness based on 'business realities.'" *Armendariz*, 6 P.3d at 692.

Applying those principles, we conclude that two of the agreement's provisions are substantively unconscionable:

the one-sided filing provision (which imposes notice requirements and a one-year statute of limitations only on Ronderos), and the one-sided preliminary injunction carve-out (which exempts from arbitration only Reddaway's claims for preliminary injunctive relief). We address each provision in turn.

### i. The Filing Provision

The agreement's filing provision has two parts: The first part requires Ronderos to file an "Alternative Dispute Resolution Request Form" by certified mail to an address in Ohio, which we refer to as the "notice requirements." The second part requires Ronderos to comply with those notice requirements "within one year after the date [his] claim arose or [his] claim will be waived," which we refer to as the "one-year statute of limitations." We conclude that this filing provision is substantively unconscionable because it restricts Ronderos's ability to vindicate his employment rights in several ways. Further, the filing provision imposes those restrictions only on Ronderos, and that one-sidedness is unjustified.

Most egregiously, the filing provision effectively imposes the one-year statute of limitations on only Ronderos's claims. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1076 (9th Cir. 2007), *overruled in part on other grounds as recognized by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 927 (9th Cir. 2013) (finding provision that required employee to give employer notice of claim within one year "function[ed] as a statute of limitations"). That one-year statute of limitations restricts Ronderos's employment rights in at least three ways.

First, the one-year statute of limitations significantly shortens the amount of time that employees typically have to

bring employment-related claims, including the claims that Ronderos brings in this case. For example, Ronderos's claims under the FEHA are subject to at least a three-year statute of limitations, *see* Cal. Gov. Code § 12960(e)(5), as are his claims for untimely payment of wages, *see* Cal. Code Civ. Pro. § 338. Consequently, the filing provision is an unconscionable "vehicle for the waiver of [Ronderos's] statutory rights." *Martinez v. Master Prot. Corp.*, 12 Cal. Rptr. 3d 663, 672 (Ct. App. 2004) (quoting *Armendariz*, 6 P.3d at 681). For that reason alone, the provision is substantively unconscionable. *See Davis*, 485 F.3d at 1077-78 (finding arbitration agreement provision that shortened statute of limitations period for employment-related statute claims to one year was substantively unconscionable).

Second, the one-year statute of limitations effectively deprives Ronderos of the benefit of the continuing violation doctrine. That doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." *Richards v. CH2M Hill, Inc.*, 29 P.3d 175, 176 (Cal. 2001). The continuing violation doctrine is available for FEHA claims, including Ronderos's claim for failure to accommodate his disability. *Id.*

Third, the one-year statute of limitations starts to run when Ronderos's "claim arose"—not when Ronderos knew or reasonably should have known about the claim. This means that the filing provision also deprives Ronderos of the availability of the "discovery rule." The discovery rule, "where applicable, indefinitely delays accrual of a cause of action until the plaintiff discovers or reasonably has cause to discover the facts constituting it." *Samuels v. Mix*, 989 P.2d 701, 706 (Cal. 1999). The California Supreme Court has described the discovery rule as "the most important

exception to the general rule that a cause of action accrues when the allegedly wrongful result occurs." *Id.* (internal quotation marks and citation omitted). Because Reddaway's filing provision deprives Ronderos of the discovery rule, it is *more* restrictive of Ronderos's rights and more unconscionable than the filing provision that we found unconscionable in *Davis*, 485 F.3d at 1076, which expressly incorporated the discovery rule.

To make things worse, the filing provision is one-sided: *only* Ronderos must comply with the notice requirements and one-year statute of limitations or else waive his claims. Reddaway does not offer any business-related justification for imposing a one-year statute of limitations on Ronderos but not itself. Nor does Reddaway offer any business-related justification for depriving Ronderos of the benefits of the discovery rule and continuing violation doctrine but not itself.

Reddaway does offer a business-related justification for the filing provision's one-sided notice requirements. Specifically, Reddaway asserts that the notice requirements merely explain to Ronderos how to initiate arbitration. Then, building on that assertion, Reddaway argues that the one-sided nature of the notice requirements is justified because Reddaway knows how to initiate arbitration while Ronderos does not. Reddaway also notes that in *OTO*, the California Supreme Court faulted the employer for *not* providing such an explanation to the employee. *See* 447 P.3d at 693. The problem with Reddaway's purported justification, however, is that it rests on an incorrect assertion: the filing provision's notice requirements do not merely explain to Ronderos how to initiate arbitration. Rather, the provision specifies that Ronderos "must file" a particular form by sending it to a Reddaway Vice President by certified mail "or [his] claim

*will be waived*." (Emphasis added.) The provision does not similarly require Reddaway to inform Ronderos of a dispute in a specific manner, nor does the provision state that Reddaway's claims will be waived if Reddaway does not comply. Reddaway does not offer any business justification for imposing such notice requirements only on Ronderos.

Reddaway also asserts that the agreement's one-year statute of limitations is "not without benefit to Ronderos" because it ensures that he would timely file his claims before the actual statutes of limitations (meaning, those set by statute or common law) ran. Reddaway justifies the one-sidedness of the limitation by asserting that, "as the more sophisticated part[y]," Reddaway was more likely to be aware of the relevant statutes of limitations, and thus no limitation on Reddaway's time to file a claim was necessary. Reddaway's argument is unavailing. If Reddaway had merely wanted, as it claims, to ensure that employees would bring their claims within the applicable statute of limitations, it could have informed employees of those time limits either in the arbitration agreement itself or by another method. Instead, Reddaway chose to seriously truncate the time period in which Ronderos could assert *any* claim. That choice bears no logical connection to Reddaway's purported justification of "helping" Ronderos.

In sum, the filing provision's one-sided notice requirements and one-year statute of limitations severely restrict Ronderos's ability to vindicate his employment rights and, therefore, are substantively unconscionable.

### ii. Preliminary Injunction Carve-Out

The arbitration agreement mandates arbitration for all employment claims with limited exceptions. One of the exceptions is for "claims that [Reddaway] may have against

[Ronderos] for preliminary injunctive relief." That preliminary injunction carve-out is plainly one-sided: it preserves only Reddaway's ability to seek preliminary injunctive relief in court. Because the arbitration agreement was "imposed in an adhesive context" and "requires one contracting party, but not the other, to arbitrate" all claims, it "lacks basic fairness and mutuality." *Armendariz*, 6 P.3d at 694.[9]

Reddaway argues that the district court erred "in the amount of unconscionability" it found in the preliminary injunction carve-out. First, Reddaway notes that the carve-out is limited to claims for *preliminary* injunctive relief. But, as the district court explained, this limitation does not make the preliminary injunction carve-out any less one-sided; it still grants only Reddaway access to the courts, even if that access is only on a preliminary basis.

Before the district court, Reddaway did not offer any business justification for this one-sided carve-out. On appeal, Reddaway argues that the one-sided preliminary injunction carve-out is justified for two reasons. First, Reddaway asserts that the carve-out was drafted to prevent

---

[9] Because the preliminary injunction carve-out is one sided, Reddaway's reliance on *Lange v. Monster Energy Co.*, 260 Cal. Rptr. 3d 35 (Ct. App. 2020), is misplaced. In *Lange*, the arbitration agreement's equitable remedies provision was *not* one-sided; "it expressly allow[ed] 'either party' to seek a temporary restraining order or preliminary injunction in court 'in circumstances in which such relief is appropriate.'" *Id.* at 46. Reddaway cites a portion of the *Lange* opinion that discusses the parties' separate proprietary information agreement, which "lack[ed] mutuality" but did not contain an arbitration provision, and did "no more than express a set of circumstances under which equitable relief may be appropriate." *Id.* The *Lange* court's discussion of the proprietary information agreement has no relevance to this case.

an employee from violating a confidentiality agreement or disclosing trade secrets. However, the carve-out identifies such violations only as examples; it does not limit the carve-out's scope to such violations. That is, the carve-out applies to *all* claims that Reddaway might bring against Ronderos.

Second, Reddaway asserts that employees "are far less likely to require emergency injunctive relief because damages are generally a sufficient remedy" for their claims. Reddaway cites only one case to support that assertion, *Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1320 (9th Cir. 1982). But *Cancellier* does not establish that damages are generally a sufficient remedy for employees' claims. In *Cancellier*, we merely concluded that a district court did not abuse its discretion when it declined to grant injunctive relief because it found that a $2.3 million judgment against the employer was sufficient to discourage the employer from violating the Age Discrimination in Employment Act (ADEA) in the future. *Id.*

Moreover, there are good reasons to doubt Reddaway's assertion that employees generally do not need equitable relief. Many employment statutes expressly authorize courts to grant employees equitable relief. For example, in *Cancellier*, we noted that the court had the authority to grant equitable relief under the ADEA. *Id.* at 1319 (citing 29 U.S.C. § 626(b) (1976)). *See also* 42 U.S.C. § 2000e-5(g)(1) (providing for equitable remedies in cases brought under Title VII of the Civil Rights Act of 1964); *id.* at § 12117(a) (providing for equitable remedies in cases brought under the Americans with Disabilities Act); 29 U.S.C. § 216(b) (providing for equitable relief under the Fair Labor Standards Act). Equitable relief is also available under certain circumstances for FEHA claims. *See Harris v. City of Santa Monica*, 294 P.3d 49, 67 (Cal. 2013) (citing *Aguilar*

*v. Avis Rent A Car System, Inc.*, 980 P.2d 846 (Cal. 1999)) (noting that "courts may grant injunctive relief under FEHA to prevent discriminatory conduct from recurring").

Additionally, we easily find many examples in which employees have sought preliminary injunctive relief. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) (upholding preliminary injunction granted in favor of employees and former employees who brought claims for breach of fiduciary duty under Employee Retirement Income Security Act); *Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865 (9th Cir. 2008) (reversing denial of preliminary injunction in favor of employees who brought claims for violation of constitutional right to informational privacy), *rev'd* 562 U.S. 134 (2011); *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321 (7th Cir. 2022) (affirming denial of preliminary injunction to employee for claims for religious discrimination related to Covid-19 vaccine). And courts have granted employees preliminary injunctive relief, agreeing that damages would not be an adequate remedy for the employees' claims. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (affirming preliminary injunction in favor of employees and former employees for First Amendment claims); *Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023) (affirming preliminary injunction in favor of employee servicemembers for religious freedom claims related to Covid-19 vaccine); *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS (DTBx), 2012 WL 556309, at *15 (C.D. Cal. Jan. 31, 2012) (granting employees' motion for preliminary injunction to prevent mass retaliatory termination) *aff'd* 501 Fed. Appx. 713 (9th Cir. 2012).

But, even if we agreed that Reddaway has a greater need for preliminary injunctive relief than its employees (as

Reddaway asserts), we would still conclude that the one-sided preliminary injunction carve-out has no business justification and is, therefore, substantively unconscionable. We addressed a nearly identical provision in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc). In that case, the arbitration agreement gave the employer "access to a judicial forum to obtain *provisional* remedies to protect its intellectual property, while it provide[d the employee] with only the arbitral forum to resolve her claims." *Id.* at 1285 (emphasis added). Like Reddaway, the employer argued that its one-sided provisional remedy carve-out was justified by its business need "to protect its Service Marks and proprietary information." *Id.* at 1287. We rejected that argument. *Id.* As we explained then, "California courts routinely have rejected this justification as a legitimate basis for allowing only one party to an agreement access to the courts for provisional relief." *Id.* (citing *O'Hare v. Mun. Res. Ctr.*, 132 Cal. Rptr. 2d 116, 124 (Ct. App. 2003), *Mercuro v. Superior Ct.*, 116 Cal. Rptr. 2d 671, 678 (Ct. App. 2002), and *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 148 (Ct. App. 1997)); *see also Ali*, 273 Cal. Rptr. 3d at 559 (holding that one-sided provisional relief carve-out was substantively unconscionable); *cf. Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 14–15 (Cal. 2016) (rejecting unconscionability challenge to preliminary relief carve-out that permitted either party to seek relief in court). We also explained that, in California, "[a] party to an arbitration agreement may file in . . . court . . . an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." *Nagrampa*, 469 F.3d at 1287 (quoting Cal. Civ. Proc. Code § 1281.8(b))

(corrections in original). "This provision ensures mutuality between the parties so that both have access to the courts to obtain preliminary injunctions, temporary restraining orders, and other forms of provisional relief." *Id.* Because the provisional relief clause preserved only the employer's "right to obtain provisional relief," we concluded that the clause was substantively unconscionable. *Id.* We conclude the same here.

To the extent that Reddaway argues that the preliminary injunction carve-out's substantive unconscionability is only nominal, we disagree. *See id.* at 1286–87, 1293. In *Nagrampa*, we concluded that only two clauses "exhibit[ed] a lack of mutuality supporting a finding of substantive unconscionability": the provisional relief clause that is nearly identical to Reddaway's preliminary injunction carve-out, and a forum selection clause. *Id.* at 1285. Then, we applied California's sliding scale test for unconscionability, and we concluded that the arbitration agreement was unconscionable—"even though the evidence of procedural unconscionability [wa]s slight"—because "the evidence of substantive unconscionability [wa]s strong enough to tip the scale." *Id.* at 1293.

Applying California's sliding scale approach in this case, we conclude that the agreement is unconscionable. Because of the one-sided preliminary injunction carve-out, one-sided one-year statute of limitations, and one-sided notice requirements, the agreement lacks mutuality and has a high degree of substantive unconscionability. Having found at least a moderate degree of procedural unconscionability, the substantive unconscionability is more than enough to tip the scale. Even if the procedural unconscionability were only minimal, as Reddaway contends, we would reach the same conclusion. *See, e.g. , id.*; *Ajamian v. Cantor CO2e, L.P.*, 137

Cal. Rptr. 3d 773, 794 (Ct. App. 2012); *Parada v. Superior Ct.*, 98 Cal. Rptr. 3d 743, 768–69 (Ct. App. 2009); *Lange v. Monster Energy Co.*, 260 Cal. Rptr. 3d 35, 43, 49–50 (Ct. App. 2020).

## II. Severability

After concluding that the agreement contains multiple procedurally and substantively unconscionable provisions, the district court declined to sever those provisions and enforce the remainder of the agreement. We review the district court's decision not to sever the unconscionable provisions for abuse of discretion. *Lim*, 8 F.4th at 999 (citing *Bridge Fund*, 622 F.3d at 1000).

California law provides, as a general rule, that unlawful contractual provisions should be severed and the remainder of the contract enforced. Cal. Civ. Code § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."). However, California Civil Code § 1670.5(a) provides,

> [i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"The California Supreme Court has construed § 1670.5(a) as giving 'a trial court some discretion as to whether to sever or

restrict the unconscionable provision or whether to refuse to enforce the entire agreement.'" *Bridge Fund*, 622 F.3d at 1005 (quoting *Armendariz*, 6 P.3d at 695).[10]

When deciding whether to sever an unconscionable provision, "[c]ourts are to look to the various purposes of the contract." *Armendariz*, 6 P.3d at 696. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id.* In that event, § 1599 does not require severance, because the contract has "no lawful object of the contract to enforce." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (citing *Marathon Entm't, Inc. v. Blasi*, 174 P.3d 741, 743 (Cal. 2008)). But, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz*, 6 P.3d at 696.

To determine whether the central purpose of the contract is tainted with illegality, or conversely, whether the illegality is collateral to the contract's main purpose, a trial court may consider whether the "agreement contains more than one

---

[10] We recognize, as the dissent notes, that California has a "strong legislative and judicial preference" to sever. Dissent at 50; *see also Roman v. Superior Ct.*, 92 Cal. Rptr. 3d 153, 166–67 (Ct. App. 2009) (citing *Armendariz*, 6 P.3d at 695). However, as the California Supreme Court explained in *Armendariz*, California "Civil Code section 1670.5 makes clear . . . that an arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced. Furthermore, although [the Court has] spoken of a 'strong public policy of this state in favor of resolving disputes by arbitration' . . . Code of Civil Procedure section 1281 makes clear that an arbitration agreement is to be rescinded on the same grounds as other contracts or contract terms." 6 P.3d at 698 (citation omitted).

unlawful provision." *Id*. at 696–97; *see also Lim*, 8 F.4th at 1005. "That is because multiple unconscionable clauses serve as evidence of 'a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" *Lange*, 260 Cal. Rptr. 3d at 49 (quoting *Armendariz*, 6 P.3d at 697). "In other words," when an agreement contains "multiple unlawful provisions, the trial court [does] not abuse its discretion in concluding that the agreement is permeated by an unlawful purpose." *Armendariz*, 6 P.3d at 697 (citation omitted). Courts may also consider the degree of procedural unconscionability. *See*, *e.g.*, *Ali*, 273 Cal. Rptr. 3d at 560 (considering arbitration agreement's moderate level of procedural unconscionability when deciding whether severance was required); *Carlson v. Home Team Pest Def., Inc.*, 191 Cal. Rptr. 3d 29, 45 (Ct. App. 2015) (stating that the court could not "ignore the fundamental shortcoming inherent in a request to sever substantively unconscionable terms" when an arbitration agreement "establishes such a high level of procedural unconscionability").

In addition, the California Supreme Court has identified two policy reasons to sever objectionable terms instead of invalidating the entire agreement: A court may sever a term (1) "to conserve a contractual relationship if to do so would not be condoning an illegal scheme," or (2) "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract." *Armendariz*, 6 P.3d at 696. "The overarching inquiry is whether the interests of justice would be furthered by severance." *Bridge Fund*, 622 F.3d at 1006 (cleaned up) (citation omitted).

Finally, the California Supreme Court has explained that a court "is not permitted to cure [unconscionability] through reformation and augmentation." *Armendariz*, 6 P.3d at 697. Therefore, if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement," then "it must void the entire agreement." *Id.*

In this case, the district court found that the central purpose of the agreement is tainted with illegality because the agreement contains multiple provisions that benefit Reddaway to Ronderos's detriment. For example, the court noted that the agreement requires Ronderos to arbitrate his employment-related claims against Reddaway, while it "preserve[s] a judicial forum for those employment-related claims that [Reddaway is] most likely to bring." Additionally, the district court concluded that neither of the policy reasons supporting severance are present in this case because Ronderos is no longer employed by Reddaway. The district court also considered the agreement's severability clause, but ultimately concluded that "no justice would be furthered by severance and the [agreement's] unconscionable terms are sufficiently unfair that the [agreement] should not be enforced." The district court appropriately considered all the relevant factors and did not abuse its discretion in finding sufficient evidence that the agreement is permeated with unconscionability and declining to sever the unconscionable terms.

Reddaway argues that the district court should have found that the unconscionable provisions are merely "collateral" to the main purpose of the contract, and that it erred by instead finding that the multiple unconscionable provisions show that the central purpose of the agreement is tainted with illegality. We disagree.

"[N]o verbal formulation can precisely capture the full contours of the range of cases in which severability properly should be applied, or rejected," which is why the decision to sever is "appropriately directed to the sound discretion of the . . . trial courts in the first instance." *Marathon Entm't*, 174 P.3d at 744. Still, after reviewing numerous cases that address severability, we find that this case falls well within the range of cases in which a trial court has the discretion to conclude *either* that an agreement is permeated by illegality (and that the unconscionable provisions are not severable), *or* that the illegality is merely collateral to the agreement's main purpose (and that "the illegal provision can be extirpated" from the agreement). *Armendariz*, 6 P.3d at 696.

On the one hand, appellate courts have held that trial courts abused their discretion by declining to sever when the agreement involved only a low level of procedural unconscionability and contained only one substantively unconscionable provision. *See, e.g.*, *Farrar v. Direct Com., Inc.*, 215 Cal. Rptr. 3d 785, 798–800 (Ct. App. 2017) (holding trial court abused its discretion in declining to sever when procedural unconscionability was low and agreement contained only one substantively unconscionable provision); *Poublon*, 846 F.3d at 1273–74 (holding the same, where procedural unconscionability was low and agreement contained only one substantively unconscionable provision and one unenforceable provision that could be limited).

On the other hand, an appellate court has held that a trial court erred by compelling arbitration when the agreement was an adhesive contract imposed as a condition of employment and it contained three substantively unconscionable provisions (a one-sided carve-out for the employer's claims for injunctive relief; a cost-splitting provision; and a six-month statute of limitations). *Martinez*,

12 Cal. Rptr. 3d. at 669–73. The court considered whether the offending provisions could be limited or severed but concluded that they could not because the agreement was "permeated with illegality and unconscionability." *Id.* at 673.

Although these cases do not establish bright lines, they shed some light on the outer bounds of a trial court's range of discretion. Our understanding of the trial court's range of discretion is confirmed by our review of cases in which appellate courts have held that the trial court acted *within* its discretion. *Compare*, *e.g.*, *Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 184 (Ct. App. 2015) (decision to sever was within trial court's discretion when procedural unconscionability was minimal and agreement contained only one substantively unconscionable provision), *with Lim*, 8 F.4th at 1006 (decision *not* to sever was within trial court's discretion when procedural unconscionability was more than minimal and agreement contained three substantively unconscionable provisions). *See also Alberto v. Cambrian Homecare*, 308 Cal. Rptr. 3d 230, 241 (Ct. App. 2023) (decision not to sever "while not required, was within its discretion" when agreement had low degree of procedural unconscionability and three substantively unconscionable provisions); *Beco v. Fast Auto Loans, Inc.*, 302 Cal. Rptr. 3d 168, 184 (Ct. App. 2022) (decision *not* to sever was within trial court's discretion when procedural unconscionability was moderate and agreement contained three substantively unconscionable provisions); *Davis v. Kozak*, 267 Cal. Rptr. 3d 927, 944–45 (Ct. App. 2020) (*disapproved on other grounds by Ramirez*, 551 P.3d at 534 (decision *not* to sever was within trial court's discretion when procedural unconscionability was only minimal and agreement contained two substantively unconscionable provisions);

*Ali*, 273 Cal. Rptr. 3d at 560 (decision *not* to sever was within trial court's discretion when procedural unconscionability was moderate and agreement contained three substantively unconscionable provisions). Additionally, in *Armendariz*, the California Supreme Court concluded that "the trial court did not abuse its discretion in concluding that the arbitration agreement [was] permeated by an unlawful purpose" because the arbitration agreement contained two unlawful provisions: an unlawful damages provision and a unilateral arbitration clause. 6 P.3d at 697–99.

In this case, the procedural unconscionability is at least moderate, and the agreement contains at least two substantively unconscionable provisions. It has both a one-sided preliminary injunction carve-out, which allows only Reddaway to seek a provisional remedy in court, and a one-sided filing provision, which severely limits only Ronderos's ability to vindicate his employment rights in two different ways: by shortening the statute-of-limitations for Ronderos's claims to one year, and by imposing notice requirements only on Ronderos. The basis for the district court's finding that the agreement is "permeated by an unlawful purpose" is comparable to that in *Armendariz*, *Beco*, *Ali*, and *Alberto*, and greater than that in *Davis*, where there was only minimal procedural unconscionability and two substantively unconscionable provisions (a discovery limitation and a one-sided carve-out for disputes involving an employee confidentiality agreement), 267 Cal. Rptr. 3d at 944–45. Therefore, like the California Supreme Court in *Armendariz*, we conclude that, "given the multiple unlawful provisions, the [district] court did not abuse its discretion in

concluding that the arbitration agreement is permeated by an unlawful purpose." [11] 6 P.3d at 697.

Reddaway cites several cases in which trial courts exercised their discretion to sever multiple unconscionable provisions. Those cases, however, do not mean that the district court abused its discretion by deciding *not* to sever multiple unconscionable provisions. As the California Court of Appeals explained in *Lange*, the fact that an agreement contains more than one unconscionable provision does not *preclude* the trial court from severing, but an agreement "*can* be considered permeated by unconscionability if it contains more than one unlawful provision." 260 Cal. Rptr. 3d at 49 (emphasis in original) (internal quotation marks and citation omitted). *See also Ramirez*, 551 P.3d at 546, ("[T]here are no bright line numerical rules regarding severance[.]").

Reddaway also contends that the district court abused its discretion by not severing because the agreement contains a severability clause. Again, we disagree. The district court considered the agreement's severability clause and correctly noted that such clauses "evidence the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid or unlawful." *Baeza v. Superior Ct.*, 135 Cal. Rptr. 3d 557, 568 (Ct. App. 2011). The district court also correctly noted that, under California law, the mere presence of a severability clause is not dispositive. *See Ramirez*, 551 P.3d at 547 (explaining that while the trial court should take a severance

---

[11] Many of Reddaway's arguments are premised on its assertion that the agreement contains only one substantively unconscionable provision. We do not need to address those arguments because we agree with the district court that the agreement contains at least two substantively unconscionable provisions.

clause into account as an expression of the parties' intent, "the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause"). The presence of a severability clause is only one factor in the severability analysis; the "overarching inquiry is whether the interests of justice . . . would be furthered by severance." *Armendariz*, 6 P.3d at 696. California courts have frequently held that a trial court did not abuse its discretion in declining to sever unconscionable provisions, even though the agreement contained a severability clause. *See, e.g.*, *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 292 Cal. Rptr. 3d 740, 750, 758 (Ct. App. 2022); *Dennison v. Rosland Cap. LLC*, 260 Cal. Rptr. 3d 675, 679–80, 682 (Ct. App. 2020); *Dougherty v. Roseville Heritage Partners*, 260 Cal. Rptr. 3d 580, 585, 592 (Ct. App. 2020); *Carlson*, 191 Cal. Rptr. 3d at 34, 45; *see also Parada*, 98 Cal. Rptr. 3d at 753, 770 (issuing writ of mandate and overturning order compelling arbitration).

The dissent suggests that our decision violates the FAA's prohibition against "singling out [arbitration] contracts for disfavored treatment." Dissent at 58 (quoting *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017)). To the contrary, this case involves a straightforward application of longstanding California standards for determining unconscionability and the severability of unconscionable provisions. After the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the California Supreme Court reviewed its unconscionability standards, which apply to all types of agreements, and concluded that they do not disfavor arbitration agreements and are not preempted. *See Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 201–03 (Cal. 2013), *cert denied* 134 S. Ct. 2724 (2014). Indeed, the

FAA's savings clause expressly "permits arbitration agreements to be declared unenforceable" by the application of such unconscionability standards. *AT&T*, 563 U.S. at 339 (quoting 9 U.S.C. § 2). Neither California's standards nor our application of them in this case violate the FAA.

The dissent would create a new rule that requires courts to give dispositive effect to severability clauses in all but the most egregious cases. Such a rule has no support in California law. The dissent suggests that the FAA requires courts to give dispositive effect to severability clauses in arbitration agreements, but that is also incorrect. Such a rule would *favor* arbitration agreements over other types of contracts. The FAA prohibits courts from disfavoring arbitration agreements, but it does not require *favorable* treatment. *See id.* at 339 (holding the FAA requires courts to "place arbitration agreements on an equal footing with other contracts") (citations omitted). To favor arbitration agreements by giving special force to their severability clauses would also conflict with California law, where "arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts." *Armendariz*, 6 P.3d at 698.

## CONCLUSION

The district court correctly concluded that the arbitration agreement involves at least a moderate degree of procedural unconscionability. The district court also correctly concluded that the one-sided preliminary injunction carve-out and the filing provision's one-sided one-year statute of limitations and one-sided notice requirements are substantively unconscionable. And the district court acted well within its discretion in finding, based on the agreement's procedural unconscionability and its multiple

substantively unconscionable provisions, that the agreement's central purpose is permeated with unconscionability.

Therefore, the district court appropriately declined to sever the unconscionable provisions and enforce the remainder of the agreement.

**AFFIRMED.**

---

BENNETT, Circuit Judge, dissenting:

Not once has the California Supreme Court, nor any of the California Courts of Appeal, affirmed a trial court's refusal to sever easily excisable collateral provisions from an arbitration agreement that includes a severability clause. Nor have we—until today. The district court abused its discretion because it misapplied California law in declining to sever the collateral provisions here. It should have severed those provisions and granted Reddaway's motion to compel arbitration. Both its decision and the majority's evince the type of "judicial hostility to arbitration" that led Congress to pass the Federal Arbitration Act ("FAA"). *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649 (2022). And both are directly contrary to "the FAA's edict against singling out [arbitration] contracts for disfavored treatment." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017). Thus, I respectfully dissent.

## I.  BACKGROUND

Jose Ronderos was a line haul dispatcher and then a line haul manager for Reddaway. Before he began working for the company, Ronderos signed a two-page document featuring only two capitalized headings: "CANDIDATE'S

STATEMENT" and "AGREEMENT TO ARBITRATE." As the latter heading states, the document contained an arbitration agreement.

After he worked for Reddaway for about two and a half years, Ronderos was officially laid off in a workforce reduction. But Ronderos alleged in a lawsuit that he was really laid off because of his age, cancer-related disability, and need for accommodation. Reddaway eventually moved to compel arbitration under the agreement Ronderos had signed, but the district court denied the motion. *See Ronderos v. USF Reddaway, Inc.*, No. EDCV 21-639-MWF (KKx), 2021 WL 2670740, at \*1 (C.D. Cal. June 2, 2021). Ronderos alleges that the candidate statement was presented on a "take it or leave it" basis and that he "had no choice to sign [it] and was pushed to sign [it] immediately, on site."

## II.  DISCUSSION

The FAA "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021).

Ronderos does not dispute that the arbitration clause covers his claims. The question is thus whether the agreement was valid under the "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties agree that California law governs that inquiry here. Because Ronderos is "the party opposing arbitration," he "bears the

burden of proving any defense, such as unconscionability,"
under California law. *Pinnacle Museum Tower Ass'n v.
Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224–25
(Cal. 2012). And Ronderos argues that the agreement is
unconscionable and therefore unenforceable.

Ronderos is incorrect. Under California law, the
agreement is enforceable. It is minimally procedurally
unconscionable because it is a contract of adhesion, and it
contains two substantively unconscionable provisions. But
those two provisions are collateral to the agreement's core
purpose of securing an arbitral forum and can be easily
severed without reforming or augmenting the rest of the
agreement. And the agreement's severability clause
underscores this conclusion.

"We review a district court's choice not to sever
unconscionable portions of an arbitration agreement
governed by California law for abuse of discretion." *Bridge
Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d
996, 1000 (9th Cir. 2010). Here, by refusing to sever the
substantively unconscionable clauses, the district court
committed legal error and thus abused its discretion. *See
Native Ecosystems Council v. Marten*, 883 F.3d 783, 789
(9th Cir. 2018).

### *A. Unconscionability*

Under California law, "the doctrine of unconscionability
has both a procedural and a substantive element, the former
focusing on oppression or surprise due to unequal bargaining
power, the latter on overly harsh or one-sided results."
*Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016)
(internal quotation marks and citation omitted). They "must
*both* be present in order for a court to exercise its discretion
to refuse to enforce a contract or clause . . . [b]ut they need

not be present in the same degree." *Id.* (internal quotation marks and citation omitted). Instead, courts evaluate unconscionability along "a sliding scale" under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation marks and citations omitted).

Here, the arbitration agreement is only minimally procedurally unconscionable. A procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 689 (Cal. 2000). As the majority notes, Reddaway concedes that the arbitration agreement is an adhesive contract, Majority Op. 7, which "alone" establishes "a fairly low level of procedural unconscionability." *Cisneros Alvarez v. Altamed Health Servs. Corp.*, 274 Cal. Rptr. 3d 802, 817 (Ct. App. 2021).

"The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019) (citation omitted). "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* (internal quotation marks and citations omitted). If "there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 512 (Ct. App. 2013) (citations omitted).

First, Ronderos failed to even allege either oppression or surprise in his opposition to Reddaway's motion to compel arbitration. Even if he had, there is no oppression or surprise here. California recognizes at least five "circumstances relevant to establishing oppression" in the procedural unconscionability context. *Kho*, 447 P.3d at 690 (citation omitted). They "include, but are not limited to":

> 1) the amount of time the party is given to consider the proposed contract;
>
> 2) the amount and type of pressure exerted on the party to sign the proposed contract;
>
> 3) the length of the proposed contract and the length and complexity of the challenged provision;
>
> 4) the education and experience of the party; and
>
> 5) whether the party's review of the proposed contract was aided by an attorney.

*Id.* at 690–91 (citation omitted).

These factors do not support a finding of oppression here. Ronderos's allegations as to the first two factors are simply too threadbare to support a finding of oppression. As to the first factor, Ronderos stated in a declaration appended to his opposition that the agreement was presented as "take it or leave it," that he "had no choice to sign" it, and that he "was pushed to sign [it] immediately, on site." But he did not state in his declaration or otherwise allege in his papers how long he was allowed to inspect the agreement on site and whether that was an inadequate amount of time to review

the agreement. *Cf. Carmona v. Lincoln Millennium Car Wash, Inc.*, 171 Cal. Rptr. 3d 42, 50 (Ct. App. 2014) (factoring in that a plaintiff "was given only a few minutes to review the multipage employment agreement").

As to the second factor, Ronderos did not allege any details about either the amount or type of pressure that Reddaway allegedly used. He alleged no "sharp practices," such as being "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *Baltazar*, 367 P.3d at 12.

The fourth and fifth factors weigh toward a finding of oppression: Ronderos alleged that he did not know what arbitration was and that he was not aided by an attorney in reviewing the contract. But it is the third factor in the oppression analysis that is decisive here: the agreement's brevity and relative simplicity compared to other agreements that California courts have found to be only minimally oppressive.

The agreement is just two pages, and the relevant heading, "AGREEMENT TO ARBITRATE," is followed by just over one page of text organized into ten paragraphs. A clear heading weighs against procedural unconscionability. *See, e.g.*, *Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 161 (Ct. App. 2009).

Although the district court characterized the font size as "smaller than average," it said nothing more about the font size. *See Ronderos*, 2021 WL 2670740, at *4. Nor does the record inform us as to the precise font size. Ronderos did not allege the font size in his opposition to the motion to compel, and does not provide a meaningful response to Reddaway's argument that the text is "normal-sized." Reviewing the scanned copy of the agreement in our record,

as well as the district court docket, the font size does not materially impact the ability to read the agreement and thus its use by Ronderos does not seem like an attempt to "hide" the agreement or discount its importance. The clear organization by topic, delineated headings, and readable font of this arbitration agreement distinguish it from the "extremely small" font in the agreement in *Kho*, which rendered it "visually impenetrable." 447 P.3d at 692.

And the agreement does not contain any hidden provisions that could cause surprise. *Cf. Carmona*, 171 Cal. Rptr. 3d at 50 (finding surprise when a defendant "hid the enforceability clause and the entire confidentiality subagreement by failing to translate that portion of the agreement into Spanish," even though the plaintiffs could not read English).

California courts have found significantly more elaborate agreements to not be "unreasonably prolix or complex." *Davis v. Kozak*, 267 Cal. Rptr. 3d 927, 936 (Ct. App. 2020) ("*Kozak*"), *disapproved on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520 (Cal. 2024). One "standalone three-page document" that was "clearly labeled 'Binding Arbitration Agreement'" and printed in "standard-sized and readable text," *id.*, was found to "demonstrate[] a low degree of procedural unconscionability," *id.* at 938, even though "a few paragraphs" contained "overly long or complicated sentences" or "statutory references and legal jargon," *id.* at 936. And another agreement was found to have "limited" procedural unconscionability when its arbitration provision was "contained on the last page of a seven-page employment application," "set forth in a separate, succinct (four-sentence) paragraph that [the employee] initialed," and printed "underneath the heading 'Please Read Carefully,

Initial Each Paragraph and Sign Below.'" *Roman*, 92 Cal. Rptr. 3d at 161. By contrast, absent other indications of oppression or surprise, a moderate amount of procedural unconscionability arises only in significantly longer and more prolix agreements. *See, e.g.*, *Ali v. Daylight Transp., LLC*, 273 Cal. Rptr. 3d 544, 554, 556 (Ct. App. 2020).

Yet the district court found that the arbitration agreement's "execution involved at least a moderate degree of procedural unconscionability" based on its assessment of two related cases. *Ronderos*, 2021 WL 2670740, at *4. The (virtually identical) agreements and circumstances in those cases—*Kho* and *Davis v. TWC Dealer Group, Inc.*, 254 Cal. Rptr. 3d 443 (Ct. App. 2019) ("*TWC Dealer*")—are nothing like those here. Even the district court "admitted" that the arbitration agreement's "substance is somewhat less oppressive and surprising than the agreements in *Kho* and *TWC Dealer*, which were both written in a block text, single paragraph format that challenged the limits of legibility." *Ronderos*, 2021 WL 2670740, at *5. (cleaned up).

*Kho* illustrates "significant oppression." 447 P.3d at 691. There, Kho, a car dealership service technician, was told to sign an adhesive agreement to keep his job of three years. *Id.* Various other factors suggested oppression, as well: the dealership's compensation system meant that any time Kho spent reviewing the agreement reduced his pay; a low-level employee presented Kho with the agreement, conveying the impression that the dealership expected no request for explanation; and the employee waited for the documents, conveying the impression that the company expected Kho to sign the documents immediately and without examination or consultation with counsel. *Id.* The agreement itself was "a paragon of prolixity, only slightly more than a page long but written in an extremely small font"

that was so "visually impenetrable" that it "challenge[d] the limits of legibility." *Id.* Its "single dense paragraph covering arbitration require[d] 51 lines." *Id.* And that single paragraph referenced at least four federal and state statutes; three federal and state administrative agencies; the federal and state arbitration acts; six sections of the California Civil Code and Code of Civil Procedure; and other unspecified local, state, or federal laws or regulations. *Id.* at 691–92.

The arbitration provision in *TWC Dealer* was "virtually identical (if not identical)" to the one in *Kho* because the car dealerships in both cases were represented by the same law firm. 254 Cal. Rptr. 3d at 450. The *TWC Dealer* court incorporated *Kho*'s analysis and added that the agreement lacked "paragraphs to delineate different topics" and that the "second sentence of the arbitration clause manage[d] to occupy 11 lines of text, notwithstanding the tiny typeface." *Id.* (citation omitted).

Ronderos encountered different circumstances. First, the agreement was presented to Ronderos as part of the job application process, not while he was on the job and not after years of employment. *Ronderos*, 2021 WL 2670740, at \*1.[1] Ronderos was not at risk of losing his current employment

---

[1] The majority accuses me of "disregard[ing] the California Supreme Court's conclusion" in *Armendariz*. Majority Op. 12 n.3. To be sure, the California Supreme Court noted that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees *may* be particularly acute." *Armendariz*, 6 P.3d at 690 (emphasis added). My point is that the district court's reliance on *Kho* and *TWC Dealer* was misplaced as "Ronderos encountered different circumstances." I do not dispute that, under *some* circumstances, preemployment arbitration contracts *may* exert acute economic pressure on prospective employees. But those circumstances simply do not exist here.

or being paid less based on the time he spent reviewing the agreement. And although Ronderos alleged that he was pushed to sign the agreement immediately, at the job site, he failed to allege any details of the circumstances—such as that a low-level employee presented him with the agreement, that the employee waited for him to sign it, or that he was not able to ask any questions.

The oppressive features of the agreements in *Kho* and *TWC Dealer* are completely absent here. The font is not visually impenetrable; there are neither excessive run-on sentences nor paragraphs without breaks. The agreements in *Kho* and *TWC Dealer* also featured several complex statutory references. By contrast, the statutory references here fill fewer than four total lines of text. And since *Kho*, California courts have found only limited procedural unconscionability when an arbitration agreement includes statutory references in "a few paragraphs," *Kozak*, 267 Cal. Rptr. 3d at 936, and separately, when they are "necessary to define the claims covered by arbitration" and "are explained in lay terms," *Cisneros Alvarez*, 274 Cal. Rptr. 3d at 818. The statutory references here define "Employment Claims," and they follow plain, non-legalistic introductory language. As a result, these references are "reasonably understood in context to refer to various anti-discrimination laws." *Martinez v. Vision Precision Holdings, LLC*, No. 1:19-cv-01002-DAD-JLT, 2019 WL 7290492, at \*6 (E.D. Cal. Dec. 30, 2019) (distinguishing *Kho*).[2]

---

[2] The full paragraph defining "Employment Claims" reads:

> Employment Claims include, but are not limited to, claims of discrimination, harassment or retaliation and claims for benefits brought against the Company (or its officers, directors, employees, agents, affiliated

The only other statutory references are in the choice-of-law provision, which by definition *must* reference the applicable law. The district court read the choice-of-law provision to "bolster [its] conclusion that the [agreement] is procedurally unconscionable" because understanding the provision "would require a painstaking comparison of both the federal and the Indiana arbitration acts to determine which law applies to any given issue." *Ronderos*, 2021 WL 2670740, at \*5. But the choice-of-law provision simply denotes the application of the FAA or—where the FAA is inapplicable or silent—the Indiana Uniform Arbitration Act, Ind. Code § 34-57-2. And contracting parties may fill such gaps with a state arbitration act because "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989).

The district court simultaneously penalized Reddaway for *not* including statutory references in the cost-splitting provision. It found that this provision contributed to procedural unconscionability because it referenced the potential applicability of other unlisted statutory provisions or controlling case law. *See Ronderos*, 2021 WL 2670740,

---

companies, and parties affiliated with its employee benefit plans) whether based on local, state or federal laws or regulations, or on tort, contract, or equitable law, or otherwise. By way of example only, Employment Claims include claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights [Act] of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and the Fair Labor Standards Act.

50       RONDEROS v. USF REDDAWAY, INC.

at \*4. To the district court, Ronderos "would have had no real ability to identify which statutes or controlling case law governed the attorneys' fees provision, and as a result, would have had no understanding of its practical effect." *Id.*

But the cost-splitting provision here differs significantly from the problematic one in *Kho*, which the district court cited. The provision here stated in plain language that costs would be split equally unless a controlling statute or case law provided otherwise—in which case <u>Reddaway</u> would pay. But the provision in *Kho* stated only that a specific statutory provision governed without stating what that meant. 251 Cal. Rptr. 3d at 728. The two cost-splitting provisions could not be more different in terms of (lack of) complexity.[3]

In sum, the district court erred in finding "at least a moderate degree of procedural unconscionability." *Ronderos*, 2021 WL 2670740, at \*5.

### B. Severability

Severance is "the strong legislative and judicial preference" in California. *Roman*, 92 Cal. Rptr. 3d at 166. "A court may 'refuse to enforce the entire agreement' only when it is '*permeated by unconscionability*.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (emphasis added) (quoting *Armendariz*, 6 P.3d at 695). "On the other hand, '[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be

---

[3] The majority goes so far as to recommend how Reddaway could have phrased the cost-splitting provision better. Majority Op. 14 n.5. But "we do not rewrite any provision of any contract . . . for any purpose." *Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 356 (Cal. 2003). California law mandates that a "Judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted*." Cal. Civ. Proc. Code § 1858 (emphasis added).

extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.'" *Id.* (alteration in original) (quoting *Marathon Ent., Inc. v. Blasi*, 174 P.3d 741, 743 (Cal. 2008)).

Here, the contract is not remotely "permeated by unconscionability." Therefore, even though there are two substantively unconscionable provisions in this agreement—the one-sided filing provision and the preliminary-injunctive relief carve out—those provisions can easily be severed without disturbing the "main purpose of the contract." *Id.* Thus, the district court abused its discretion by refusing to sever them and to enforce the agreement—and the majority repeats the district court's error.

An agreement is *permeated* by unconscionability when "[t]he good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good." *Id.* (quoting *Keene v. Harling*, 392 P.2d 273, 276 (Cal. 1964) (alteration in original)). California statutes guide this inquiry:

> If a California court concludes that a contract contains one or more unconscionable clause[s], it may: (1) refuse to enforce a contract that was "unconscionable at the time it was made"; (2) "enforce the remainder of the contract without the unconscionable clause"; or (3) "limit the application of any unconscionable clause as to avoid any unconscionable result."

*Id.* (quoting Cal. Civ. Code § 1670.5(a)). Although California Civil Code § 1670.5 "appears to give a trial court some discretion as to whether to sever or restrict the

unconscionable provision or whether to refuse to enforce entire agreement," "it also appears to contemplate the latter course *only* when an agreement is 'permeated' by unconscionability." *Armendariz*, 6 P.3d at 695 (emphasis added). And under a related provision of the code, "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." *Poublon*, 846 F.3d at 1272 (quoting Cal. Civ. Code § 1599).

California law rejects a per se rule "that an agreement is necessarily permeated by unconscionability if more than one clause in the agreement is unconscionable or illegal." *Id.* at 1273; *see Lange v. Monster Energy Co.*, 260 Cal. Rptr. 3d 35, 49 (Ct. App. 2020). Instead, courts weigh at least three factors in determining whether an agreement is permeated by unconscionability:

> 1) Whether "the agreement contains more than one objectionable term";
>
> 2) Whether they can "strike or restrict" any objectionable term "in order to remove the unconscionable taint from the agreement"[4]; and

---

[4] Courts have alternatively expressed this factor as whether there is a "single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz*, 6 P.3d at 697. This imprecise phrasing might at first blush seem to count the multiple-unlawful-provisions factor twice. Instead, the second factor seeks to ascertain whether "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," a procedure that is not authorized by statute. *Id.*

> 3) Whether the agreement includes a severability clause, which "makes clear that the parties intended for any invalid portion of the agreement to be restricted."

*Poublon*, 846 F.3d at 1273–74 (citation omitted); *see Baeza v. Superior Court*, 135 Cal. Rptr. 3d 557, 568 (Ct. App. 2011) (severability clause factor). "In each case, the dispositive question is whether 'the central purpose of the contract' is *so tainted with illegality that there is no lawful object of the contract to enforce*." *Poublon*, 846 F.3d at 1273 (emphasis added) (quoting *Marathon Ent.*, 174 P.3d at 743).

Here, the contract is not "so tainted with illegality that there is no lawful object to enforce." *Id.* Therefore, the district court abused its discretion in declining to sever the substantively unconscionable provisions. The arbitration agreement also contains a severability clause stating that any provision found to be unlawful "shall be stricken" and that the "remainder of [the] Agreement shall be enforced." "The presence of a severability clause makes severance more feasible." *Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 632 (N.D. Cal. 2019) (internal quotation marks and citation omitted). Since severance is already feasible here, the severability clause simply reinforces that severance is the only appropriate remedy.

The district court offered three erroneous reasons for declining to sever the substantively unconscionable provisions. It determined that: (i) "the central purpose of the Contract is tainted with illegality"; (ii) because "the parties' employment relationship ha[d] ended," the "policy reasons supporting severance" no longer apply; and (iii) "because the Arbitration Clause contains multiple unlawful provisions, it indicates the Contract's systematic effort to impose

arbitration on Plaintiff as an inferior forum that works to the employer's advantage." *Ronderos*, 2021 WL 2670740, at *8–9 (cleaned up).

These errors are in large part simply incorrect applications of the law. The central purpose of the agreement is not tainted with illegality—and the existence of two unconscionable provisions is merely one factor that courts may consider in assessing whether severance is appropriate. *See Lange*, 260 Cal. Rptr. 3d at 49. And the end of the parties' employment relationship does not mean that the policy reasons supporting severance no longer apply. The district court asserted that "the Arbitration Clause functions to preserve a judicial forum for those employment-related claims that Defendants are most likely to bring." *Ronderos*, 2021 WL 2670740, at *9. But the resulting agreement mandates arbitration for nearly all employment-related claims—a category that "includes, but [is] not limited to," the claims it lists.

The agreement includes two substantively unconscionable provisions that would need to be severed. *See Poublon*, 846 F.3d at 1273; *Armendariz*, 6 P.3d at 696–97. Yet both provisions—the one-sided filing provision and the preliminary injunctive relief carveout—are "'collateral to the main purpose of the contract,' which is to require arbitration of disputes." *Poublon*, 846 F.3d at 1273 (quoting *Marathon*, 174 P.3d at 743). Both provisions "can be limited without affecting the remainder of the agreement"—by excising them in full. *Id.* For the statute-of-limitations provision, that means removing one sentence:

> I understand that I must file an Alternative Dispute Resolution Request Form by sending it certified mail to Jack Peak, Vice President,

> Labor and Employment Law & Litigation,
> YRC Worldwide Inc, 1077 Gorge Boulevard,
> Akron, OH 44310, within one year after the
> date my claim arose or my claim will be
> waived.

And for the preliminary injunctive relief carveout, that means removing one clause and its follow-up sentence:

> (4) claims that the Company may have
> against me for preliminary injunctive relief,
> such as to prevent me from violating a
> confidentiality agreement or disclosing trade
> secrets. However, claims that the Company
> retaliated or discriminated against me for
> filing a state employment insurance claim
> shall be subject to arbitration.

*See also Poublon*, 846 F.3d at 1273 (severing "the portion of the dispute resolution provision that permits [one party, but not the other], to seek judicial resolution of specified claims"). The resulting agreement would not contain any substantively unconscionable provisions.[5]

---

[5] The line between permissible severance and impermissible reformation is often clear. It is not an abuse of discretion when a district court declines to sever unconscionable provisions if "sever[ing] the offending provisions would have left almost nothing to the arbitration clause." *Bridge Fund*, 622 F.3d at 1006. On the other side, it is an abuse of discretion when a district court severs unconscionable provisions that "cannot be stricken or excised without gutting the agreement." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007), *overruled on other grounds by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). Severance here would not "gut" the agreement, and is therefore permissible.

56          RONDEROS V. USF REDDAWAY, INC.

In other words, we would not need to "augment[]" the contract signed by the parties "with additional terms," which was the California Supreme Court's main worry in light of the California Civil Code and arbitration statute. *Armendariz*, 6 P.3d at 697("*Because* a court is unable to cure this unconscionability through severance . . . , and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (emphasis added)). Without those concerns, we err by not respecting "the strong legislative and judicial preference" for severance in California. *Roman*, 92 Cal. Rptr. 3d at 166.

The majority fails to cite a single case in which an appellate court affirmed a trial court's choice not to sever *cleanly excisable collateral provisions* from an agreement with a severability clause. And the cases the majority does rely on are distinguishable. At least one such case did not involve an arbitration agreement with a severance clause at all. *See Beco v. Fast Auto Loans, Inc.*, 302 Cal. Rptr. 3d 168 (Ct. App. 2022), No. G059382, 2021 WL 6298676, at *32 (noting that the agreement did not contain a severance clause); *see also Armendariz*, 6 P.3d at 675. And that case, along with some others the majority discusses, involved arbitration agreements with more substantively unconscionable provisions than here. *Beco*, 302 Cal. Rptr. 3d at 183–84 (three unconscionable provisions); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1006 (9th Cir. 2021) (three unconscionable provisions led to "pervasive unconscionability"); *Alberto v. Cambrian Homecare*, 308 Cal. Rptr. 3d 230, 241 (Ct. App. 2023) (three unconscionable aspects); *Dougherty v. Roseville Heritage Partners*, 260 Cal. Rptr. 3d 580, 585, 592 (Ct. App. 2020); *Ali*, 273 Cal. Rptr. 3d at 549–50.

In two other cases, the courts decided not to sever unconscionable provisions because severing would entail rewriting or augmenting the arbitration agreements—which we would not have to do here. *Dennison v. Rosland Cap. LLC*, 260 Cal. Rptr. 3d 675, 682 (Ct. App. 2020) ("[W]e would have to rewrite the . . . Agreement by severing most of its terms and adding new ones in order to compel arbitration."); *Carlson v. Home Team Pest Def., Inc.*, 191 Cal. Rptr. 3d 29, 45 (Ct. App. 2015) ("Severance would result in the modification and enforcement of the Agreement" that contained "a "high level of procedural unconscionability").

The only remaining cases that the majority relies on had the kind of substantive unconscionability that would have permeated into—and poisoned—the proposed arbitration itself. In *Parada v. Superior Court*, 98 Cal. Rptr. 3d 743 (Ct. App. 2009), the court found unconscionable one provision requiring petitioners to arbitrate disputes before three arbitrators (whose fees they would have to split with the defendant) and another provision prohibiting consolidation or joinder of claims. *See id.* at 770. Together, these provisions would have made the proposed arbitration "so prohibitively expensive as to be unconscionable." *Id.* The court therefore found the arbitration provisions "unenforceable." *Id.*

Similarly, in *Kozak*, the arbitration agreement had only two substantively unconscionable provisions, but one of those provisions restricted petitioner's discovery rights *for* the arbitration. 267 Cal. Rptr. 3d at 940. The petitioner had shown how those restrictions would leave him "unable to vindicate his statutory rights." *Id.* The California Supreme Court has stated that "[t]he denial of adequate discovery in arbitration proceedings leads to the *de facto frustration of*

*[statutory rights]*." *Armendariz*, 6 P.3d at 683 (emphasis added). It follows naturally why a court would not compel an arbitration when its very proceedings are designed "not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Lange*, 260 Cal. Rptr. 3d at 49 (internal quotation marks omitted). Those concerns are not present here, as the two substantively unconscionable provisions could be cleanly severed, and the eventual arbitral proceeding would then not be permeated with inequality but could proceed as an alternative to litigation. Therefore, contrary to the majority's assertion, the bases for the district court's findings here are *not* "greater than that in" *Kozak*. Majority Op. 35.

The district court and the majority violate "the FAA's edict against singling out [arbitration] contracts for disfavored treatment." *Kindred Nursing Ctrs.*, 581 U.S. at 252. The Supreme Court has told us over and over that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also, e.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). But the majority avoids enforcement here by employing one of the "great variety of devices and formulas declaring arbitration against public policy." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 342 (2011) (citation and internal quotation marks omitted). This is the sort of "judicial hostility to arbitration" that led Congress to pass the FAA. *Viking River Cruises*, 596 U.S. at 649.

**\* \* \***

Ronderos signed a minimally procedurally unconscionable arbitration agreement with two

substantively unconscionable provisions. Those provisions can be cleanly severed from the agreement because they are collateral to the agreement's core purpose: securing an arbitral forum. California legislative and judicial policy favors severability when possible, and the agreement's severability clause underscores the appropriateness of that remedy here. Neither any California appellate court, nor our court has ever affirmed a trial court's refusal to sever cleanly excisable collateral provisions from an arbitration agreement with a severability clause. Because the majority makes that mistake today, I respectfully dissent.